**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| LIFE PARTNERS CREDITORS' TRUST, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-00497-O |
| JAMES ALEXANDER., et al. | § § § | |
| Defendants. | § | |

**PLAINTIFFS' MOTION FOR CERTIFICATION OF A DEFENDANT CLASS,
APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL,
AND BRIEF IN SUPPORT**

Dated: January 21, 2020

Respectfully submitted,

By: /s/ Nicole L. Williams
Nicole L. Williams
Texas Bar No. 24041784
Sydne K. Collier
Texas Bar No. 24089017
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214.969.1700
Facsimile: 214.969.1751
Nicole.Williams@tklaw.com
Sydne.Collier@tklaw.com

**ATTORNEYS FOR PLAINTIFFS**

David M. Bennett
Texas Bar No. 02139600
Nicole Williams
Texas Bar No. 24041784
THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700 (telephone)
214.969.1751 (facsimile)
david.bennett@tklaw.com
nicole.williams@tklaw.com

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-rfn11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| Debtors. | § | |

| | | |
|---|---|---|
| **LIFE PARTNERS CREDITORS' TRUST AND ALAN M. JACOBS, AS TRUSTEE OF THE LIFE PARTNERS CREDITORS' TRUST** | § § § § | **ADV. PRO. NO. 16-04036** |
| | § | **CERTIFICATION OF DEFENDANT** |
| **VS.** | § | **CLASS REQUESTED** |
| | § | |
| **JAMES ALEXANDER, et al.; each individually, and as representatives or members of a class of all others similarly situated** | § § § § § | |

### PLAINTIFFS' MOTION FOR CERTIFICATION OF A DEFENDANT CLASS, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL, <u>AND BRIEF IN SUPPORT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION & BACKGROUND ................................................................1

     A.    Life Partners Fraudulent Scheme .......................................................... 2

     B.    Transfers to Defendants ......................................................................... 4

II.     ARGUMENT & AUTHORITIES ...................................................................6

     A.    Plaintiffs seek to certify a definable Defendant Class and Subclasses. ................ 7

     B.    Because the requirements of Federal Rule of Civil Procedure 23(a) are satisfied, this Court should certify the Defendant Class and Defendant Subclasses. ........................................................................................ 10

          i.    The Defendant Class and Defendant Subclasses satisfy the numerosity requirement. .......................................................11

          ii.    The Defendant Class and Defendant Subclasses satisfy the commonality and typicality requirements.................................12

          iii.   The Defendant Class and Defendant Subclasses satisfy the adequate representation requirement.......................................................14

     C.    Because the requirements of Federal Rule of Civil Procedure 23(b)(1) are satisfied, this Court should certify the Defendant Class and Defendant Subclasses. ........................................................................................ 17

     D.    The Court should appoint Thomas S. Brandon, Jr. of Whitaker, Chalk, Swindle & Sawyer, LLP as Class Counsel. ......................................... 20

III.    PRAYER....................................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Berger v. Compaq Comput. Corp.*, 257 F.3d 475 (5th Cir. 2001) ................................................ 15

*Castro v. Collecto, Inc.*, 256 F.R.D. 534 (W.D. Tex. 2009) ......................................................... 15

*First Fed. of Mich. v. Barrow*, 878 F.2d 912 (6th Cir. 1989) ...................................................... 19

*In re Integra Realty Res. Inc.*, 354 F.3d 1246 (10th Cir. 2004) ................................................... 20

*In re Integra Realty Resources, Inc.*, 179 B.R. 264 (Bankr. D. Colo. 1995), *aff'd*, 354
    F.3d 1246 (10th Cir. 2004) ................................................................................................. 19, 20

*In re TWL Corp.*, 712 F.3d 886 (5th Cir. 2013) .......................................................................... 11

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244
    F.3d 1152 (9th Cir, 2001) ......................................................................................................... 15

*Lynch Corp. v. MII Liquidating Co.*, 82 F.R.D. 478 (D. S.D. 1979) ........................................... 19

*Mary Kay Inc. v. Reibel*, 327 F.R.D. 127 (N.D. Tex. 2018) .......................................................... 7

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ................................. 11, 12

*Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982) ........................................................................ 18

*Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) ............................................................... 13

*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ........................................... 15

*U.S. Bank Nat. Assoc. v. Verizon Commc'ns Inc.*, No. 3:10-cv-1842-G, 2012 WL
    3100778 (N.D. Tex. July 31, 2012) ........................................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 12

### STATUTES

11 U.S.C. § 502(d) ........................................................................................................................ 6

11 U.S.C. § 547, 550, 551 ............................................................................................................. 6

11 U.S.C. § 548(a)(1)(A), 550, 551 .......................................................................................... 6, 13

11 U.S.C. § 548(a)(1)(B), 550, 551 .............................................................................................. 6

11 U.S.C. §§ 105, 544, and 550 ................................................................................................... 19

11 U.S.C. §§ 544, 550, 551 .................................................................................... 6, 14

Tex. Bus. & Com. Code § 24.005(a)(1) ................................................................. 6, 13

Tex. Bus. & Com. Code § 24.005(a)(2) ...................................................................... 6

Tex. Bus. Com. Code § 24.001 ................................................................................... 19

RULES

Fed. R. Civ. P. 23 ....................................................................................................... 12

Fed. R. Civ. P. 23(a) .................................................................................................... 7

Fed. R. Civ. P. 23(b) .................................................................................................... 7

Fed. R. Civ. P. 23(g) ................................................................................................... 21

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................ 21

Fed. R. Civ. P. 23(g)(1)(C) ........................................................................................ 21

Fed. R. Civ. P. 23(g)(4) .............................................................................................. 21

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Federal Rule of Civil Procedure 23, The Life Partners[1] Creditors' Trust (the "**Creditors' Trust**")[2] and Alan M. Jacobs, as Trustee for the Creditors' Trust (the "**Creditors' Trustee**") (collectively, the "**Plaintiffs**") file this Motion for Certification of a Defendant Class and Appointment of Class Representatives and Class Counsel and Brief in Support (the "**Motion**") and would respectfully show this Court the following: [3]

## I.    INTRODUCTION & BACKGROUND[4]

1.    This adversary proceeding arises from the massive fraud perpetrated by Brian Pardo ("**Pardo**") and his accomplices.

2.    Life Partners was in the business of marketing and selling investment contracts related to life insurance policies known as viatical settlements or life settlements.  From at least on or about January 1, 2007 through on or about February 1, 2015, Pardo and his accomplices devised and implemented a scheme to defraud investors ("**Investors**") and to obtain money and property from these Investors by false and fraudulent pretenses, representations, and promises.[5]

---

[1] Reorganized Life Partners Holdings, Inc., Reorganized Life Partners, Inc., and Reorganized LPI Financial Services, Inc. (together, the "Reorganized Debtors").

[2] The Creditors' Trust was created as part of the *Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") that was confirmed on November 1, 2016, and went effective on December 9, 2016. *See* Order Confirming Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et al., Pursuant to Chapter 11 of the Bankruptcy Code, In re Life Partners Holdings, Inc., et al., Case No. 15-40289-rfn (Bankr. N.D. Tex.) (the "Bankruptcy Case"), Dkt. No. 3439, entered Nov. 1, 2016 (the "Confirmation Order"). The Effective Date of the Plan was December 9, 2016. *See* Notice of (I) Occurrence of Effective Date, and (II) Certain Related Deadlines, In re Life Partners Holdings, Inc., et al., Case No. 15-40289-rfn (Bankr. N.D. Tex.), Dkt. No. 3615, entered Dec. 9, 2016. Alan M. Jacobs was appointed Creditors' Trustee under the Plan.

[3] Capitalized terms that are not defined herein shall have the meaning ascribed to them in Plaintiffs' Second Amended Class Action Complaint [Dkt. 41].

[4] This recitation of facts is set forth in the Second Amended Class Action Complaint at ¶¶ 1- 14 and 221-264.

[5] LPHI Bankruptcy Case, Declaration of H. Thomas Moran II in Support of Voluntary Petitions, First Day Motions and Designation as Complex Chapter 11 Case (the "Moran Declaration"), Dkt. No. 347; and *The Trustee's Report Concerning His Investigation of the Debtors' Pre-Petition Business Conduct*, LPHI Bankruptcy Case, Dkt. No. 1584 (the "Report") are incorporated herein by reference.

3.     Pardo and his accomplices implemented the fraudulent scheme to defraud Investors and the Life Partners Estate[6] through misrepresentations and omissions and in so doing transferred tens of millions of dollars to other entities and individuals.

4.     Defendants and the Defendant Class were beneficiaries of Life Partners' scheme. Since 2008, Defendants and the Defendant Class collectively profited from this scheme through the transfers by Life Partners to Defendants and the Defendant Class of tens of millions of dollars that LPHI fraudulently distributed in the form of illegitimate dividends.

**A.     Life Partners Fraudulent Scheme**

5.     Pardo was the CEO of LPI from its incorporation in 1991 until February 2015 and also served as LPHI's President, CEO, and Chairman of the Board from January 2000 until January 2015.  Pardo owned more than 50% of LPHI's stock through his family trust (the "**Pardo Family Trust**")[7] and, through dividends, salaries, and other transfers, he and other accomplices looted the company of monies earned through the fraudulent scheme.

6.     The fraudulent scheme orchestrated by Pardo and his accomplices involves a web of falsities, but a primary element for many years was the sale of investment contracts (through which Investors obtained an interest in the proceeds of a life insurance policy) on the basis of life expectancies ("**LEs**" or "**LE**") that were significantly shorter than those provided to Life Partners by independent, third-party LE providers in the industry on the very same insureds.  Life Partners did not disclose to its Investors that it had a longer LE in its possession, nor did it disclose that the

---

[6] "Estate" or "Life Partners Estate" refers to the collective bankruptcy estates of LPHI and the Subsidiary Debtors.

[7] Pardo Family Trust ("PFT") owns Pardo Family Holdings, Ltd. ("PFH"), and PFH owns over 50% of the stock of LPHI.  Upon information and belief, Pardo Family Holdings US, LLC ("PFHUS") was created, and PFT now owns PFHUS, which now owns PFH.  As such, the term "Pardo Family Trust" herein refers to PFT, PFH, and PFHUS collectively.

doctor that provided LEs to Life Partners was untrained and had no prior experience rendering actuarial LEs.

7.    The LEs Life Partners used to market its investments were far too short in most instances, and as a result of unanticipated premium obligations, the actual cost of the investment for thousands of Investors exceeded what those Investors were told and what they planned for, frequently resulting in severely diminished returns (if any) for Investors and, in some cases, voluntary abandonments of their investments.  The shortened LEs, which at one time generated profits for LPI and Pardo, ultimately led to litigation against Life Partners.

8.    Pardo and other accomplices also misrepresented to Investors the acquisition cost of the investments.  The "acquisition cost" included the amount Life Partners had paid for the policy, the premiums to be escrowed, and fees to Life Partners, its sales agents ("**Licensees**"), and others.

9.    Specifically, Life Partners hid the egregious amount it charged in fees and commissions from its Investors, never disclosing that roughly one-third of all investment dollars went to fees and commissions paid to Life Partners and its Licensees.  Instead, Investors believed, based on representations of the value of the investments, that their funds were used by Life Partners to purchase the policies and to escrow for anticipated future premiums.  In reality, on average, less than 20% of the proceeds from Investors were used to acquire the policy.  The remaining 80% of the acquisition cost was divided primarily between future premiums and commissions to Licensees and Life Partners.  But because, among other things, Life Partners had misled Investors about the actual LE of the insureds, the Investors' escrowed funds were rarely sufficient to pay the needed premiums.  Investors were therefore frequently called upon to make up the difference, reducing their possible return with every additional premium payment.

10.     Until the filing of LPHI's bankruptcy petition, the fraudulent scheme continued to generate funds that flowed into the pockets of Pardo and other accomplices, at the expense of Life Partners and its Investors.

**B.     Transfers to Defendants**

11.     Shareholders (other than Pardo and his entities) received transfers of funds from LPHI in the form of dividends from January 2008 through February 2015, totaling approximately $33.9 million (the "**Transfers**").  Defendants and the Defendant Class, as set forth in the Second Amended Class Action Complaint, are each of those shareholders of LPHI stock who received dividends paid by LPHI[8] to such shareholder, whether directly, through an intermediary holding company, or otherwise, from January 2008 through February 2015. In this Motion, Plaintiffs seek to certify a defendant class of all shareholders receiving at least $1,375 in dividends.

12.     These dividends were fraudulent transfers because Defendants and the Defendant Class exchanged no reasonably equivalent consideration for what they received. These distributions deprived Life Partners of amounts which otherwise would be available to administer and maintain the life insurance policies at the heart of Life Partners' business for the benefit of the defrauded Investors.

13.     Pardo looted Life Partners (and conspired with family members and other accomplices to do so) even after he knew the business had become insolvent and unsustainable, including by declaring illegitimate dividends, and Defendants and the Defendant Class benefitted from the fraud at the expense of Life Partners and its creditors. Indeed, three such dividends were

---

[8] While LPHI made dividend distributions to its shareholders, all funds or monies used for such dividend distributions originated from LPI's business operations and sale of investment contracts.  Specifically, the dividend distributions to Defendants and the Defendant Class consisted of funds or monies transferred from the accounts of LPI to LPHI.

declared and paid *after* a federal court jury found LPHI, Pardo, and Life Partners' then-General

Counsel, Secretary, and President R. Scott Peden liable for violating the federal securities laws.

14.     Specifically, from January 2008 through February 2015, LPHI declared and paid

dividends on the following dates and in the following amounts:

| Date Declared | Record Date | Date Paid | Dividend/Share | Approximate Shares Outstanding | Total Dividends | Dividends to Shareholders (excl. Pardo and PFH) |
|---|---|---|---|---|---|---|
| 2/8/2008 | 2/29/2008 | 3/14/2008 | 0.06 | 11,960,542 | $ 718,091.91 | $ 419,063.38 |
| 5/21/2008 | 6/1/2008 | 6/16/2008 | 0.07 | 11,887,213 | $ 831,562.73 | $ 483,634.10 |
| 8/7/2008 | 8/31/2008 | 9/15/2008 | 0.07 | 11,887,213 | $ 832,051.33 | $ 485,223.31 |
| 10/22/2008 | 11/30/2008 | 12/15/2008 | 0.08 | 11,887,213 | $ 953,747.17 | $ 562,001.57 |
| 2/24/2009 | 3/6/2009 | 3/16/2009 | 0.07 | 14,952,372 | $ 1,040,034.01 | $ 614,572.19 |
| 5/7/2009 | 5/25/2009 | 6/15/2009 | 0.07 | 14,859,016 | $ - | $ - |
| 5/14/2009 | 5/25/2009 | 6/15/2009 | 0.25 | 14,859,016 | $ 4,754,669.27 | $ 2,809,700.95 |
| 7/27/2009 | 8/7/2009 | 9/15/2009 | 0.25 | 14,859,016 | $ 3,715,339.49 | $ 1,840,339.74 |
| 10/26/2009 | 11/6/2009 | 12/15/2009 | 0.25 | 14,859,016 | $ 3,714,823.28 | $ 2,195,316.78 |
| 1/25/2010 | 2/5/2010 | 3/15/2010 | 0.25 | 14,859,016 | $ 3,714,997.59 | $ 1,839,997.84 |
| 4/26/2010 | 5/7/2010 | 6/15/2010 | 0.25 | 14,915,246 | $ 3,728,938.95 | $ 1,853,939.20 |
| 8/6/2010 | 8/6/2010 | 9/15/2010 | 0.25 | 14,915,246 | $ 3,728,877.00 | $ 1,853,877.00 |
| 9/3/2010 | 10/15/2010 | 10/29/2010 | 0.25 | 14,915,246 | $ 3,728,509.35 | $ 1,853,509.35 |
| 10/21/2010 | 11/5/2010 | 12/15/2010 | 0.25 | 14,915,246 | $ 3,728,227.50 | $ 1,853,228.25 |
| 1/6/2011 | 1/31/2011 | 2/15/2011 | 0.04 | 18,644,057 | $ 746,320.00 | $ 371,320.04 |
| 1/21/2011 | 2/4/2011 | 3/15/2011 | 0.20 | 18,644,057 | $ 3,729,547.81 | $ 1,854,548.01 |
| 5/4/2011 | 5/16/2011 | 6/15/2011 | 0.20 | 18,647,468 | $ 3,732,481.70 | $ 1,857,481.90 |
| 8/11/2011 | 8/26/2011 | 9/15/2011 | 0.20 | 18,647,468 | $ 3,729,141.66 | $ 1,854,141.86 |
| 11/23/2011 | 12/9/2011 | 12/15/2011 | 0.20 | 18,647,468 | $ 3,729,044.40 | $ 1,854,044.60 |
| 2/27/2012 | 3/9/2012 | 3/15/2012 | 0.10 | 18,647,468 | $ 1,865,322.71 | $ 927,822.81 |
| 5/23/2012 | 6/4/2012 | 6/15/2012 | 0.10 | 18,647,468 | $ 1,864,572.30 | $ 927,072.40 |
| 8/8/2012 | 9/3/2012 | 9/26/2012 | 0.10 | 18,647,468 | $ 1,865,623.56 | $ 928,123.66 |
| 12/3/2012 | 12/14/2012 | 12/17/2012 | 0.10 | 18,647,468 | $ 1,864,701.52 | $ 927,201.62 |
| 2/25/2013 | 3/8/2013 | 3/15/2013 | 0.10 | 18,647,468 | $ 1,864,565.40 | $ 927,065.50 |
| 6/4/2013 | 6/14/2013 | 6/17/2013 | 0.05 | 18,647,468 | $ 932,260.15 | $ 463,510.20 |
| 9/6/2013 | 9/17/2013 | 9/20/2013 | 0.05 | 18,647,468 | $ 932,509.06 | $ 463,759.11 |
| 12/17/2013 | 12/30/2013 | 1/3/2014 | 0.05 | 18,647,468 | $ 934,664.78 | $ 465,914.83 |
| 3/4/2014 | 3/14/2014 | 3/18/2014 | 0.05 | 18,647,468 | $ 932,356.51 | $ 463,606.56 |
| 5/28/2014 | 6/9/2014 | 6/16/2014 | 0.05 | 18,647,468 | $ 932,283.69 | $ 463,533.74 |
| 9/2/2014 | 9/15/2014 | 9/17/2014 | 0.05 | 18,647,468 | $ 928,687.24 | $ 462,243.09 |
| **TOTAL DIVIDENDS PAID** | | | | | $ 65,773,952.07 | $ 33,875,793.59 |

15.     These dividends were fraudulent transfers because Defendants and the Defendant

Class exchanged no reasonably equivalent consideration for what they received and LPHI was

insolvent and unsustainable at the time of the transfers.  These distributions deprived Life Partners

of amounts which otherwise would be available to administer and maintain the life insurance policies at the heart of Life Partners' business for the benefit of the defrauded Investors.

16.     As a result, Plaintiffs brought the Complaint to recover the substantial monies transferred to Defendants and the Defendant Class asserting the following claims: [9]

- Actual Fraudulent Transfer –Tex. Bus. & Com. Code § 24.005(a)(1) through 11 U.S.C. §§ 544, 550, 551 (against Defendant Class and all Subclasses) *See* Exhibit A at ¶¶ 275-288;

- Constructive Fraudulent Transfer - Tex. Bus. & Com. Code § 24.005(a)(2) through 11 U.S.C. §§ 544, 550, 551 (against 2011-2013 Subclass and 2013-2015 Subclass) *See* Exhibit A at ¶¶ 289-300;

- Actual Fraudulent Transfer –11 U.S.C. § 548(a)(1)(A), 550, 551 (against 2013-2015 Subclass) *See* Exhibit A at ¶¶ 301-308;

- Constructive Fraudulent Transfer - 11 U.S.C. § 548(a)(1)(B), 550, 551 (against 2013-2015 Subclass) *See* Exhibit A at ¶¶ 309-318;

- Preference - 11 U.S.C. § 547, 550, 551 (against Defendant Class, including any named or unnamed member who are insiders) *See* Exhibit A at ¶¶ 319-329; and

- Disallowance of Defendants' Claims – 11 U.S.C. § 502(d) (against Defendant Class and all Subclasses) *See* Exhibit A at ¶¶ 330-331.

## II.      ARGUMENT & AUTHORITIES

17.     A motion for class certification must assert that there is a definable class, that the four requirements of Rule 23(a) are met, and that the class meets at least one of the three categories of Rule 23(b). FED. R. CIV. P. 23(a); FED. R. CIV. P. 23(b). The party seeking class certification

---

[9] *See* Plaintiffs' Second Amended Complaint, attached hereto as **Exhibit A.**

bears the burden of proving that all of the required elements of Rule 23 are met by a preponderance of the evidence. *Mary Kay Inc. v. Reibel*, 327 F.R.D. 127, 129 (N.D. Tex. 2018). Plaintiffs can meet this burden as set forth herein.

**A.    Plaintiffs seek to certify a definable Defendant Class and Subclasses.**

18.    Plaintiffs bring this Motion to request that the Court certify a Defendant Class and four Defendant Subclasses with the named Defendants set forth in ¶ 40 as class representatives.

19.    Specifically, Plaintiffs propose the following Defendant Class:

All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received at least $1,375 in total dividends at any time from January 2008 through February 2015, whether directly, through an intermediary holding company, or otherwise.  Excluded from the class are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, Ann M. Gray, 7-Eleven, Inc. Employees Profit Sharing Plan, Allied Waste, Peabody Energy Holding Company Master Trust, Ageon USA, Bank of New York Mellon, Northern Trust Bank NA, Wells Fargo Bank, Southside Bank, Kayne Anderson, Stephen C. Kwan, William M. Cross, William Chapman, and parties or entities that have settled with Plaintiffs.[10]

20.    Plaintiffs also propose the following subclasses (collectively the "**Defendant Subclasses**"), which align with the dividend declaration time periods applicable to each of Plaintiffs' claims:

a.    All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time between January 2008 through January 19, 2011, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, Ann M. Gray, 7-Eleven, Inc. Employees Profit Sharing Plan, Allied Waste, Peabody Energy Holding Company Master Trust, Ageon USA, Bank of New York Mellon, Northern Trust Bank NA, Wells Fargo Bank, Southside Bank, Kayne Anderson, Stephen C. Kwan, William M. Cross, William Chapman, and parties or entities that have settled with Plaintiffs (the "2008-2011 Subclass");

---

[10] In the event the proposed Defendant Class is certified, Plaintiffs will dismiss the Defendants currently named in the lawsuit that received less than $1,375 in total dividends. Plaintiffs reserve the right to continue to sue individually the defendants who received less than $1,375 in total dividends in the event that the class is not certified.

     b.        All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time from January 20, 2011 through January 19, 2013, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, Ann M. Gray, 7-Eleven, Inc. Employees Profit Sharing Plan, Allied Waste, Peabody Energy Holding Company Master Trust, Ageon USA, Bank of New York Mellon, Northern Trust Bank NA, Wells Fargo Bank, Southside Bank, Kayne Anderson, Stephen C. Kwan, William M. Cross, William Chapman, and parties or entities that have settled with Plaintiffs (the "2011-2013 Subclass");

     c.        All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time from January 20, 2013 through January 20, 2015, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, Ann M. Gray, 7-Eleven, Inc. Employees Profit Sharing Plan, Allied Waste, Peabody Energy Holding Company Master Trust, Ageon USA, Bank of New York Mellon, Northern Trust Bank NA, Wells Fargo Bank, Southside Bank, Kayne Anderson, Stephen C. Kwan, William M. Cross, William Chapman, and parties or entities that have settled with Plaintiffs (the "2013-2015 Subclass").[11]

21.     Plaintiffs have made significant efforts to identify the members of the Defendant Class. *First,* members of the class were identified through LPHI's general ledger, company records, court filings, proofs of claim, and other related documents filed in the Bankruptcy Case. The General Ledger identified "Cede & Co-The Depos" ("**Cede & Co.**") as receiving a large share of the dividend payments. After conducting further research, it was discovered that Cede & Co. is a specialized United States institution that works as a large clearing house that holds shares in its name for banks, brokers, and institutions in order to expedite the sale and transfer of stock. Cede

---

[11] In the event the proposed Defendant Class is certified, Plaintiffs will dismiss the Defendants currently named in the lawsuit that received less than $1,375 in total dividends. Plaintiffs reserve the right to continue to sue individually the Defendants who received less than $1,375 in total dividends in the event that the class is not certified.

& Co. provided a list that identified financial institutions who were acting as intermediaries for LPHI shareholders. *See* Exhibit B-1; *and see* Exhibit B-2.

22. *Second*, Plaintiffs issued subpoenas to the intermediaries on the list provided by Cede & Co. requesting information regarding persons who held shares in LPHI and received dividends from January 2008 through February 2015.[12]

23. Plaintiffs retained and designated an expert forensic accounting firm, Brandi Kleinman of Veritas Advisory Group ("**Veritas**"), to review the data from LPHI and received from the intermediary financial institutions and to establish a method to identify and to identify members of the proposed class. The Declaration of Brandi Kleinman is attached hereto as **Exhibit B** and incorporated herein by reference. This method and the resulting analysis (current through April 12, 2019) are detailed in the Expert Report, attached hereto as **Exhibit B-1**, and the Updated Expert Report attached hereto as **Exhibit B-2**. Veritas concluded that the shareholder defendant class could be defined and ascertained.[13]

24. From the complete set of 25,141[14] identified individual shareholders, it was determined by Plaintiffs to exclude from the Defendant Class they seek to certify persons or entities that received less than $1,375 in total dividend payments during the relevant period. After performing this analysis, Veritas identified by name and address 1,986 individual shareholders and 51 entity shareholders, as well as 159 shareholders with partial identifying information such as an account number or clearing account number,[15] that received LPHI dividend payments in at least

---

[12] To date, information has been produced by 51 intermediaries. *See* Exhibit B.

[13] Plaintiffs' Expert Designations Related Solely to the Issue of Class Certification is attached hereto as **Exhibit D**.

[14] This count excludes Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, Ann M. Gray, and individuals that have settled with Plaintiffs.

[15] Plaintiffs are continuing to work with Veritas and the intermediaries to identify these shareholders by name and address.

this amount.  These 2,196 shareholders received approximately $13.6 million in dividend payments.

25.     Upon certification of the proposed Defendant Class, Plaintiffs propose notice be given to the known class members directly by first class mail to the last known address and to any unknown class members indirectly by sending notices by first class mail to intermediary financial institutions who may have clients that are members of the Defendant Class or Defendant Subclasses. Plaintiffs are prepared to pay reasonable expenses associated with providing notice and estimate it would cost approximately $2,000 to $3,000.

26.     The discovery period for class certification has ended, but Plaintiffs have outstanding subpoenas that were timely served that may further identify members of the Defendant Class. Moreover, additional intermediaries were discovered through the subpoena responses received necessitating more discovery to identify additional shareholders by name and address. Plaintiffs intend and reserve the right to continue their efforts to identify shareholders that fit into the class definition, and, when they are identified, have the members noticed and included in the Defendant Class.

**B.     Because the requirements of Federal Rule of Civil Procedure 23(a) are satisfied, this Court should certify the Defendant Class and Defendant Subclasses.**

27.     The request sought in this Motion is maintainable as a defendant class action pursuant to Federal Rule of Civil Procedure 23(a).

28.     Federal Rule of Civil Procedure 23(a) states as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four prerequisites are often referred to, respectively, as numerosity, commonality, typicality, and adequate representation. This Defendant Class and Defendant Subclasses satisfy all of the Rule 23(a) prerequisites.

       i.     *The Defendant Class and Defendant Subclasses satisfy the numerosity requirement.*

29.    The determination of whether a putative class satisfies the numerosity prerequisite for class certification is not based on numbers alone; the test is whether the class is so numerous that joinder of all members is impracticable. Relevant factors are the size of the class, judicial economy, the nature of the action, geographical location of class members, and the ease of identifying class members. *In re TWL Corp.*, 712 F.3d 886, 893 (5th Cir. 2013). A class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999).

30.    The numerosity prerequisite is clearly satisfied here:

- *Number of Members.* At this time, Plaintiffs have identified over 2,000 members for the proposed Defendant Class.[16] Plaintiffs have identified 1,464 members of the 2008-2011 Subclass; 1,612 members of the 2011-2013 Subclass; and 1,011 members of the 2013-2015 Subclass.

- *Geography.* The members of the Defendant Class and Defendant Subclasses are located in many of the United States.

- *Judicial Economy.* Due to size of the proposed Defendant Class, it would be a massive waste of the judiciary's valuable resources to litigate the same case thousands of times over or require each Defendant Class member to be named, served, and personally appear and/or hire counsel in this case. Judicial economy is promoted by a Defendant Class here because the underlying facts and legal determinations are shared amongst all members. Indeed, the class members received dividend payments due to the fraud committed by Pardo and his accomplices that is not an individualized determination. Thus, any determination of the key issues in this case will apply to every member of the class allowing for judicial efficiency.

---

[16] This proposed Defendant Class limits that set forth in in the Second Amended Class Action Complaint by imposing a dollar-amount threshold. Plaintiffs identified 1,986 individuals, 51 entities, and 159 unique account identifiers who received an amount equal to or greater than $1,375 in dividend payments between 2008 and 2015.

- *Identifying Class Members*. Plaintiffs and their retained expert have reviewed shareholder data from 51 intermediaries and to date have identified over 2,000 class members, which is a substantial amount of the proposed class. Plaintiffs continue to work diligently to identify as many class members as possible.[17]

31.    For all of these reasons, Plaintiffs' proposed class is so numerous that joinder of all members is impracticable.

ii.    *The Defendant Class and Defendant Subclasses satisfy the commonality and typicality requirements.*

32.    Commonality requires a showing that "there are questions of law or fact common to the class" that generate common answers apt to drive resolution of litigation. FED. R. CIV. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (opining that determination of a common question of law or fact will resolve an issue that is central to the validity of each one of the claims in one stroke) (internal citations omitted). "Like commonality, the test for typicality is not demanding." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d at 625 (5th Cir. 1999). Typicality is satisfied when the class representative's claims have the same essential characteristics of those of the other class members, such as a similar course of conduct or the same legal theories. *Stirman v. Exxon Corp.*, 280 F.3d 554, 561 (5th Cir. 2002).

33.    This lawsuit satisfies the commonality and typicality prerequisites because all of the issues presented and the answers to those issues are applicable to the entire class, and Plaintiffs' claims against all of the class members arise from the same set of operative facts and implicate the same legal theories. Specifically, Plaintiffs brought this adversary proceeding against a Defendant Class alleging the Defendant Class received dividend payments fraudulently transferred by Life Partners at the direction and under the control of Pardo and the other fraudster executives and accomplices.  The adversary proceeding seeks the return of the dividend payment amounts to

---

[17] *See* Exhibit B.

Plaintiffs. The proper focus when analyzing a fraudulent transfer action is to examine the intent and circumstances of the transferor at the time of the transfer, it does not require knowledge or intent on the part of the transferee (in this case, the shareholder). *See* 11 U.S.C. § 548; TEX. BUS. & COM. CODE § 24.005(a); *U.S. Bank Nat. Assoc. v. Verizon Commc'ns Inc.*, No. 3:10-cv-1842-G, 2012 WL 3100778 at *11 (N.D. Tex. July 31, 2012) (stating that "in a fraudulent transfer claim, the defendant's intent or conduct is irrelevant."). Thus, at issue for the Defendant Class is the conduct of the underlying fraud committed by Pardo and his accomplices, not any individual conduct or facts of any class member.

34. Additionally, Plaintiffs' claims against the Defendant Class and Defendant Subclass contain common questions of law and fact because every member of the class received distributions in the form of dividends from LPHI at a time when LPHI had no profits to distribute. This is a determination that can be made on a class-wide basis both as to LPHI's financial condition as well as the timing and amount of dividends to each class members.[18] *See* Exhibit B, Declaration of Brandi Kleinman. The common questions of law or fact include, but are not limited to, the following:

    a.  Whether the declaration and payment of one or more dividends by LPHI constituted or actual or constructive fraudulent transfer under, *inter alia*, 11 U.S.C. §§ 544, 548, 550, 551;

    b.  Whether the distribution of dividends was intended to hinder, delay, or defraud creditors within the meaning of the Texas Uniform Fraudulent Transfer Act or other applicable fraudulent transfer law;

    c.  Whether LPHI received any value, reasonably equivalent value, or fair consideration in exchange for the dividends declared and paid during the period January 2008 through February 2015;

    d.  Whether LPHI was insolvent at the time of, or rendered insolvent by, or had unreasonably small assets or capital in relation to its business or the transaction at

---

[18] *See* Exhibit B-2, the Updated Veritas Expert Report.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – Page 13**

the time or as a result of, the declaration and payment of one or more dividends during the period January 2008 through February 2015; and

e. Whether Plaintiffs may recover the amount of one or more dividends paid by LPHI and received by shareholders during the period January 2008 through February 2015.

35.    Adjudication of any one of the common questions of law or fact would lead to resolution applicable to every single member of the Defendant Class and Defendant Subclasses.

36.    Plaintiffs' claims against the named and representative Defendants, and the named and representative Defendants' anticipated defenses to those claims, are typical of the claims and anticipated defenses of each member of the Defendant Class and the Defendant Subclasses.  The claims or defenses of the representative Defendants are typical of the claims or defenses of the class members because this lawsuit stems from the same occurrence—the Defendant Class received distributions in the form of dividend payments from LPHI at a time when in fact LPHI had no profits to distribute. Put simply, the Defendant Class benefitted from Pardo's (and others') fraud when each received dividends declared by LPHI at the same time(s). Thus, the claims of the Plaintiffs as to the representative Defendants and the defenses of the representative Defendants are the same and therefore typical of the claims against or defenses of the Defendant Class and Defendant Subclasses. *See* Exhibit B.

37.    For all of these reasons, (1) there are questions of law or fact common to Plaintiffs' proposed Defendant Class and Defendant Subclasses, and (2) the claims or defenses of the representative Defendants are typical of the claims or defenses of the Defendant Class and Defendant Subclasses.

> iii.    *The Defendant Class and Defendant Subclasses satisfy the adequate representation requirement.*

38.    The adequate representation requirement "encompasses class representatives, their counsel, and the relationship between the two" in order to ensure fair and adequate protection of

the class. *Berger v. Compaq Comput. Corp*., 257 F.3d 475, 479 (5th Cir. 2001). "[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative. . . ." *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 n.2 (9th Cir, 2001). The Fifth Circuit's "generic standard" notes the class representatives must have a sufficient level of knowledge and understanding of the litigation and not have conflicts of interest with the absent class members. *Castro v. Collecto, Inc.*, 256 F.R.D. 534, 538 (W.D. Tex. 2009); *see also Stott v. Capital Fin. Servs., Inc.,* 277 F.R.D. 316, 324 (N.D. Tex. 2011).

39.      The named Defendants, sued individually and as representatives of the Defendant Class and the Defendant Subclasses, were each shareholders during the relevant time periods and received distributions through dividends at a time when LPHI had no profits to distribute.  The interests and defenses of the named Defendants are coincident with, and not antagonistic to, those of the Defendant Class or Defendant Subclasses. Each member's interest is in defending the claims in this litigation and asserting the position that Plaintiffs are not entitled to recover the dividends paid to each Defendant Class member as damages. Plaintiffs believe that each of the named Defendants will fairly and adequately protect the interests of and have no conflict with the members of the Defendant Class and Defendant Subclasses.[19]

40.      Further, certain of the named Defendants have retained counsel and appeared and been active in this case and are therefore particularly qualified to be named as class representatives for the Defendant Class a whole and also for the following subclasses:

| Defendant Subclass | Defendant Representative(s) |
| --- | --- |
| 2008-2011 Subclass | James Alexander<br>David W. Lynn |

---

[19] Plaintiffs filed their Second Amended Class Action Complaint [Dkt. 41] on January 20, 2017, and named as defendants all shareholders that were known at that time.

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION – Page 15**

|  | Geoff B. Horst<br>Steven B. Deck<br>A.H. Brorman<br>John P. Ley<br>Clair Crossland<br>Robert G. Westrup<br>John Russell Gove<br>Steve Brorman |
|---|---|
| 2011-2013 Subclass | James Alexander<br>David R. Debusk<br>Steven B. Deck<br>John P. Ley<br>Clair Crossland<br>Robert G. Westrup<br>John Russell Gove<br>Steve Brorman |
| 2013-2015 Subclass | James Alexander<br>Russell J. Cepelak<br>David R. Debusk<br>Steven B. Deck<br>John P. Ley<br>Clair Crossland<br>Robert G. Westrup<br>John Russell Gove<br>Steve Brorman |

41.     Therefore, Plaintiffs request that the Court appoint these named Defendants as representatives of the Defendant Class and the indicated Defendant Subclasses.

42.     Alternatively, in the event this Court finds the current named Defendants not to be adequate representatives for the Defendant Class or any of the subclasses, Plaintiffs request leave to name additional defendants that are significant shareholders discovered since the filing of the Second Amended Class Action Complaint [Dkt. 41]. Following extensive discovery, Plaintiffs can now identify the most significant shareholders in each subclass,[20] and, if necessary, Plaintiffs can

---

[20] *See* Exhibit B, Declaration of Brandi Kleinman.

name these other significant shareholders, serve them, and move to appoint them as class representatives if they appear and retain counsel after service.

43.    The Defendants identified in ¶ 40 will be adequate and appropriate representatives of the Defendant Class and of the designated Defendant Subclasses because the Defendants (1) are members of the class and subclass, (2) have the same interest as, and no conflicts with, the other class members, (3) have received dividends as a result of owning shares in LPHI common stock, (4) are actively participating in this litigation, and (5) are represented by competent counsel as further detailed in Section II.D.

**C.    Because the requirements of Federal Rule of Civil Procedure 23(b)(1) are satisfied, this Court should certify the Defendant Class and Defendant Subclasses.**

44.    Because all of the prerequisites of Rule 23(a) are satisfied, the Court should certify the Defendant Class and Defendant Subclasses if it fits into one or more of the categories described in Rule 23(b). The Defendant Class and Defendant Subclasses are maintainable pursuant to Rule 23(b)(1)(A) and/or Rule 23(b)(1)(B).

45.    Federal Rule of Civil Procedure 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

46.    "It is undisputed that the purpose of Rule 23 is to prevent piecemeal litigation–to avoid (i) a multiplicity of suits on common claims resulting in inconsistent adjudications and (ii) the difficulties in determining the res judicata effects of a judgment." *Stewart v. Winter*, 669 F.2d 328, 338 (5th Cir. 1982) (internal citations omitted). Preventing duplicative litigation of common claims also has a beneficial purpose of saving time and expense to the litigants and the courts. *Id.*

In this case, both 23(b)(1)(A) and 23(b)(1)((B) are met, although only one is required for certification.

47.     Here, Plaintiffs' claims and the resulting findings are equally applicable to every member in the Defendant Class and Defendant Subclasses because Plaintiffs' claims against all of the class members arise from the same set of operative facts and implicate the same legal theories. Indeed, Plaintiffs initiated this lawsuit because every member in the Defendant Class and Defendant Subclasses received distributions in the form of dividend payments from LPHI. The Defendant Class and Defendant Subclasses received dividend payments because they held shares of common stock in LPHI between 2008 to 2015, at a time when LPHI had no profits to distribute and was acting under the fraudulent direction of Pardo and his accomplices. If the proposed class is not certified, adjudication with each member could result in different outcomes from the next despite each class member receiving dividends at the same time and under the same circumstances and being pursued under the same legal theory with the same underlying facts as to the financial conditions of LPHI and the fraudulent conduct of LPHI business by Pardo and others. *See First Fed. of Mich. v. Barrow*, 878 F.2d 912, 920 (6th Cir. 1989) (holding that Rule 23(b)(1) is satisfied when there was a risk of inconsistent adjudication of the common issues that will lead to differing interpretations of the law).

48.     Further, it is appropriate to certify a defendant class under Rule 23(b)(1) where it is apparent that resolution of a question common to all members of the class would foreclose unnamed members from defending themselves in court. *See Lynch Corp. v. MII Liquidating Co.*, 82 F.R.D. 478, 482-83 (D. S.D. 1979) (certifying a defendant class under Rule 23(b)(1) where liability imposed on representatives shareholders would impede the unnamed shareholders from defending themselves in court); *and see In re Integra Realty Resources, Inc.*, 179 B.R. 264, 271

(Bankr. D. Colo. 1995) (certifying a defendant class of over 6,300 defendants who received unlawful distribution of dividend payments from a company at a time when the company was in a "dire financial condition[,]" And the Trustee sought to recover the dividend payments from the defendants under theories of fraudulent transfer and unlawful distribution.), *aff'd*, 354 F.3d 1246 (10th Cir. 2004).

49.     In a similar case, the Tenth Circuit upheld certification of a defendant class comprised of over 6,300 defendants receiving dividends. The trustee and plaintiff in *In re Integra Realty Resources, Inc.* brought a class action complaint against shareholders of ShowBiz Pizza Time, Inc. stock seeking to recover the benefit that was conferred onto the shareholders through dividend distributions under theories of fraudulent transfer pursuant to, in part, Tex. Bus. Com. Code § 24.001 and 11 U.S.C. §§ 105, 544, and 550. The Tenth Circuit upheld the class certification under Rule 23(b)(1)(B) on the ground that the trustee's suit against a defendant or group of defendants "could be dispositive of all remaining suits. The first suit would thus decide the rights of absent shareholders without the class action's assurance that they be adequately represented." *In re Integra Realty Res. Inc.*, 354 F.3d 1246, 1264 (10th Cir. 2004).

50.     Here, adjudication against individual members of the Defendant Class and Defendant Subclasses would substantially impair or impede each member's ability to properly defend themselves. It also is impractical for every member to have sufficient funds to properly defend itself from Plaintiffs' claims unless the member is a part of a class. Further, requiring adjudication of thousands of separate cases against the members of the Defendant Class could lead to strategic delays by the individual members to stay their own case in an effort to see how the other cases are decided in order to better their own position. This guarantees duplicative litigation of common claims, waste of judicial resources, and incurring rampant expenses to litigate the same

issue over and over again. *See In re Integra Realty Resources, Inc.*, 179 B.R. at 271 (Bankr. D. Colo. 1995), *aff'd*, 354 F.3d 1246 (10th Cir. 2004) (finding certification of defendant class appropriate under Rule 23(b)(1) because the "sheer number of separate actions on very basic questions would not only consume significant judicial resources, but more importantly it would create a very high risk of varying adjudications with respect to individual members of the class. Class certification will assure that the rights of absent parties are adequately protected and not summarily dealt with by the application of stare decisis from a case to which they were not a party.").

51.     Because separate actions against each member of the Defendant Class would lead to adverse affects that would impair or impede their ability to protect their interests and also would create a risk of inconsistent or varying adjudications, the proposed Defendant Class and Defendant Subclasses satisfy Rule 23(b)(1). *See also* Section II.B.ii (describing questions of law and fact common to the members of the Defendant Class).

**D.     The Court should appoint Thomas S. Brandon, Jr. of Whitaker, Chalk, Swindle & Sawyer, LLP as Class Counsel.**

52.     Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. FED. R. CIV. P. 23(g). The appointed class counsel must fairly and adequately represent the interest of the class. FED. R. CIV. P. 23(g)(4). In appointing class counsel, the court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" FED. R. CIV. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" FED. R. CIV. P. 23(g)(1)(C).

53. This Court should appoint Whitaker, Chalk, Swindle & Sawyer, LLP as class counsel and Thomas S. Brandon, Jr. as lead counsel for the Defendant Class and Defendant Subclasses because (i) 30 of the named Defendants and 12 of the proposed class representatives have already selected Thomas S. Brandon, Jr. to represent them; (ii) Mr. Brandon has already conducted investigations and participated in proceedings regarding the potential claims and defenses in this lawsuit, including filing motions before this Court; and (iii) Mr. Brandon and his firm have significant complex civil litigation, fraudulent transfer litigation, and class-action experience. Attached hereto as **Exhibit C** is Mr. Brandon's firm profile.

54. Because 30 of the named Defendants and 13 of the proposed Class Representatives have already selected Mr. Brandon to represent them, the Defendants are required to pool resources and create a common fund in order to pay to Mr. Brandon any attorney's fees to which he may be owed after the conclusion of this adversary proceeding. Alternatively, in the event the currently named Defendants, any newly allowed defendants, and any appointed class representatives have engaged other counsel or otherwise do not agree to the appointment of Mr. Brandon, Plaintiffs request that this Court allow sufficient time for the Defendants to confer regarding class counsel and leave open the option for obtaining new or additional counsel to serve as class counsel at the Plaintiffs' request.

### III.    PRAYER

For the foregoing reasons, Plaintiffs request that the Court (i) certify the Defendant Class and Defendant Subclasses set forth in ¶¶ 19 and 20 ; (ii) appoint A.H. Brorman, David W. Lynn, Geoff B. Horst, Russell J. Cepelak, John Russell Gove, Robert G. Westrup, John P. Ley, Steve Brorman, Steven B. Deck, Clair Crossland, David R. Debusk, and James Alexander as class representatives for the Defendant Class and for the Defendant Subclasses as set forth in ¶ 40, and (iii) appoint Whitaker, Chalk, Swindle & Sawyer, LLP as counsel for the Defendant Class and

Defendant Subclasses and designate Thomas S. Brandon, Jr. as lead counsel for the Defendant Class and Defendant Subclasses. Alternatively, Plaintiffs request leave to amend the Second Amended Class Action Complaint to add additional defendants and propose additional class representatives and/or class counsel. Plaintiffs also request all other and further relief to which they are entitled at law and in equity.

**DATED: May 31, 2019**

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By: /s/ Nicole L. Williams
Nicole L. Williams
Texas Bar No. 24041784
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214.969.1700
Facsimile: 214.969.1751
Nicole.Williams@tklaw.com

**ATTORNEY FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 31, 2019, the foregoing was served on all parties entitled to service via the Court's Electronic Filing System and to all others listed below pursuant to Federal Rule of Civil Procedure 5(b) (made applicable to this case pursuant to Federal Rule of Bankruptcy Procedure 7005).

Camilla L. Westrup
13331 White Oak Landing
Houston, TX 77065

Charles D. Westrup
13331 White Oak Landing
Houston, TX 77065

J. Pat Shortal
722 W. County Road, Ste. C
Jerseyville, IL 62052

Marilyn Swearingin
23598 Walnut Hollow Court
Jerseyville IL 62052

Dorothy Ng
20922 Sherman Dr.
Castro Valley CA 94552

James Cushing-Murray
Adams Lincoln Trust
6768 Golf Club Drive
Longmont CO  80503

George M. Davidson
841 County Road 320
Florence, AL 35634

Charmaine Wages
8390 E. Vida de Ventura, Suite F-110
Scottsdale, AZ 85258

Randal Kasamoto
2971 Matese Dr
Henderson NV 89052

/s/  *Sydne K. Collier*
Sydne K. Collier

## CERTIFICATE OF CONFERENCE

Nicole L. Williams, counsel for Plaintiffs, conferred on May 30, 2019 and May 31, 2019, with Thomas S. Brandon, Jr. and Robert A. Simon, counsel for several defendants, in compliance with the conference requirement in Local Bankruptcy Rule 7007-1. Thomas S. Brandon, Jr. and Robert A. Simon, counsel for several defendants, are opposed to the relief sought in this Motion.

Nicole L. Williams, counsel for Plaintiffs, conferred on May 30, 2019 and May 31, 2019, with Phillip P. Owens, II, counsel for a defendant, in compliance with the conference requirement in Local Bankruptcy Rule 7007-1. Phillip P. Owens, II, counsel for a defendant, did not respond whether they are opposed or unopposed to the relief sought in this Motion. Therefore, they are presumed to be opposed.

/s/  *Nicole L. Williams*
Nicole L. Williams