# EXHIBIT A

David M. Bennett
Texas Bar No. 02139600
Nicole Williams
Texas Bar No. 24041784
Jennifer R. Ecklund
Texas Bar No. 24045626
THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700 (telephone)
214.969.1751 (facsimile)
david.bennett@tklaw.com
nicole.williams@tklaw.com
jennifer.ecklund@tklaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-rfn11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| Debtors. | § | |

| | | |
|---|---|---|
| **LIFE PARTNERS CREDITORS' TRUST** | § | |
| **and ALAN M. JACOBS, as Trustee of the** | § | |
| **Life Partners Creditors' Trust** | § | |
| | § | |
| **VS.** | § | |
| | § | **ADV. PRO. NO. 16-04036** |
| **JAMES ALEXANDER; WILLIAM B.** | § | |
| **BESTE; KATHLEEN M. BESTE;** | § | |
| **CRESTVIEW CAPITAL** | § | **COMPLAINT AGAINST** |
| **MANAGEMENT, LLC; DANTE P.** | § | **DEFENDANT CLASS** |
| **MELONI; THE DAVID M. BRUCE** | § | |
| **TRUST; THE JACK LEE DIXON** | § | |
| **FAMILY REVOCABLE TRUST;** | § | |
| **JOSSELYN H. BLISS; NADIA** | § | |
| **PAMOUKIAN; THE SULLIVAN** | § | |
| **FAMILY TRUST; TEXAS FIFTY PLUS,** | § | |
| **INC.; THE WERNER WACHTLER** | § | |
| **TRUST; WILLIAM MICHAEL** | § | |
| **TOLLESON; THE BRIAN PARDO &** | § | |
| **ELIZABETH PARDO JOINT TRUST,** | § | |
| **WROS; KATHERINE A. HUFSTETLER;** | § | |
| **DARWIN C. ALLRED; MARK G.** | § | |
| **ANDERSON; CODY C. BIGGS; A.H.** | § | |
| **BRORMAN; DOROTHY BRORMAN;** | § | |

STEVE BRORMAN; KIM BUTLER;                    §
TOMMY C. CAPERTON; DANNY J.                    §
CARR; RICHARD F. CARTER;                       §
RUSSELL J. CEPELAK; ELIZABETH                  §
A. CLINE; ANNA CONWAY; EMMA                    §
CONWAY; SARA CONWAY; CLAIR                     §
CROSSLAND; GEORGE M.                           §
DAVIDSON; DAVID R. DEBUSK;                     §
STEVEN B. DECK; EMILY D.                       §
DILLARD; GERALD P. ELDER;                      §
STEVEN T. GIBSON; MARK GILBERT;                §
REX HIDLE; JAMES G. HILTON;                    §
WILLIAM HINDS; GEOFF B. HORST;                 §
JANET K. HORST; HOLLIS STEVEN                  §
HUFSTETLER; RANDAL KASAMOTO;                   §
ANDY LAWSON; JAMES T. LEE;                     §
ELIZABETH LEONARD; JAMES                       §
LEONARD; JOHN P. LEY; DAVID W.                 §
LYNN; SEAN B. MANESS; THOMAS R.                §
MCELROY; WILLIAM MCEWEN;                       §
STEVEN H. MINNICH; JAMES                       §
MICKELSON; JOHN R. MURRAY;                     §
SUSAN NIEDER-CASSEL; GARY                      §
RHODES; EDWIN M. SCHROETER;                    §
JACQUELYN SCHUMACHER; KURT                     §
SCHUMACHER; JOHN P. SCHORTAL;                  §
GERALD J. SLAMINSKI; JAMES                     §
SMITH; GARLAND K. SMITH;                       §
ROBERT E. STEVENS; EARL                        §
STEWART; BRAD TOMLINSON; C.                     §
MARK TOWNSEND; DEAN                            §
VAGNOZZI; CHARMAINE WAGES;                     §
ROBERT G. WESTRUP; HARRY J.                    §
WILSON; DAVID S. YOUZVA; LEIGH                 §
HILTON; WILFRIED KNOOP; ELLEN                  §
E. LEVINSON; DEBORAH POARCH                    §
DAY; MICHAEL BORBAS; THE                       §
ANDREW LOWELL LARSON III                       §
TRUST; ANDREW LOWELL LARSON                    §
III; AMANDA M. WOOTEN;                         §
KIMBERLEY ANN JONES; PETER J.                  §
RUNNING; GARY E. HORSEY;                       §
THEODORE J. RHODES; WILLIAM G.                 §
HAUGEN; THE MARION D.                          §
WOODWORTH REVOCABLE TRUST;                     §
JOSEPH D. FELDMAN; MAO BAI; NAI                §

ZHANG; GEOFF HORST AND JANET §
HORST, as Joint Tenants; DOROTHY §
NG; LISAH CHEN; RAFIK BOLIS; §
MORA BOLIS; ALEC HIR; MILTON R. §
TEPAS; ROBERT W. MORGAN; §
MURIEL A. MORGAN; JOHN §
RUSSELL GOVE; KUOMIN G. TSENG; §
MARILYN N. SWEARINGIN; JAMES R. §
DEMERS; KATHLEEN POHLID; §
SHEILA C. SHORT; GEORGE B. §
STEIN; CAMILLA L. WESTRUP and §
CHARLES D. WESTRUP as Joint §
Tenants; CHARLES SCARPELLINO; §
THE BRADLEY R. STIENSTRA AND §
CAROL J. STIENSTRA TRUST; BENNY §
LEE JOHNSON; CHERYL ANN §
JOHNSON; HELENE KLEBAN; §
RANDALL COLE; JESSICA COLE; §
CAROLINE L. CRAWFORD; §
ISABELLA F. PULEO AND MARK A. §
PULEO, as Joint Tenants; ISABELLA F. §
PULEO AND MARK A. PULEO, as §
Custodians for Acacia J. Puleo; §
ISABELLA F. PULEO AND MARK A. §
PULEO, as Custodians for Nicolas P. §
Puleo; ISABELLA F. PULEO AND §
BRIANNE L. PULEO, JR., as Joint §
Tenants; ISABELLA F. PULEO, as §
Custodian for Griffin M. Scrimiege; §
ISABELLA F. PULEO AND MARK A. §
PULEO, as Custodians for Dirk M. Puleo; §
ISABELLA F. PULEO, as Custodian for §
Emerson I. Puleo; MARK J. PULEO; §
ISABELLA F. PULEO; CHRYSTAL A. §
PULEO; JOHN BURK; JAY §
CHRISTOFFERSON; LILLIAN J. §
CAWLEY; GERALD P. ELDER; §
THOMAS ROEDER MCELROY AND §
BEVERLY JEAN MCELROY, AS Joint §
Tenants; CHERLYNN LEE FRIEZ; §
FLORA LEE; MARAT YUSPA; ANNA §
YUSPA; FRED J. MCCOLLAND; §
DENNIS SIMONIAN; PHILIP G. §
SCHAFFNER; THOMAS J. RYAN; §
ZUAN XING; JAMES E. GRAY; MARY §
A. GRAY; WILLIAM P. §

DOCHTERMAN; ARTHUR D. HODDE; §
FRANKLIN D. ENGLISH; BEVERLY J. §
REED; MARVIN GRASTY; THE §
ADAMS LINCOLN TRUST; MERLE G. §
WISCHNOFSKE AND BEVERLY J. §
WISCHNOFSKE, as Joint Tenants; §
MELCHOR BALAZS; ISABEL §
BALAZS; NATHINE O. GOLDENTHAL §
AND ELAINE S. GOLDENTHAL as Joint §
Tenants; JOHN S. MURATORE; §
RONALD LARRY HANKINS; JACK L. §
DIXON; ESTER CONE; AQUINAS §
HOBOR; ARTHUR R. HORAK; §
BATRUS & CO.; CHARLES E. OWENS §
and LOIS J. OWENS as Joint Tenants; §
CRAIG COOKE; EMMA SUE BISSETT §
BURCH; FIRST SOUTHWEST §
COMPANY; FOR CHILDRENS SAKE; §
FREDERIC P. CLAUSSEN; §
FREDERICK STEARNS; GARY §
SAMSON; GEORGE LEMIRE and §
THELMA LEMIRE as Joint Tenants; §
GERALD ABBOTT and MARILYN §
ABBOTT as Joint Tenants; HAM LONG §
SHORT MASTER FUND LTD.; JACK §
GRAY JR.; JACK P. DONAHUE; §
JAMES C. KARL; JAMES §
HALLOWELL III; JEAN FATHEREE; §
JEFFREY BRODNICK; JOANN DIXON; §
JOHN BEREZNIAK and ETHALIA §
BEREZNIAK as Joint Tenants; JOHN §
DICOSKEY and DOROTHY DICOSKEY §
as Joint Tenants; JOSEPH A. DIONNE; §
WINIFRED DIGNAM; KATHERINE C. §
TROMBATORE; KENNETH §
MORRISON and SARA MORRISON as §
Joint Tenants; LOIS J. OWENS; LOUIS §
CAMPISE; MICHAEL HERNANDEZ; P- §
FLAG; PAUL H. PIERI; PEARSON H. §
STEWART and JEAN BAKER §
STEWART as Joint Tenants; RACHEL S. §
BAKER; RICHARD SHAW; ROBERT §
BEADING; ROBERT SADOWSKI and §
NORINNE SADOWSKI as Joint Tenants; §
ROBERT WARK JR. as Administrator of §
the Sally Wark Estate; STUART ANSON; §

| TEXAS GUARDIANSHIP | § |
| ASSOCIATION; UPCH & CO.; and | § |
| WILLIAM WILHELMY and DORINE | § |
| WILHELMY as Joint Tenants; each | § |
| individually, and as representatives or | § |
| members of a class of all others similarly | § |
| situated | § |
| | § |

## SECOND AMENDED CLASS ACTION COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Life Partners[1] Creditors' Trust (the "Creditors' Trust")[2] and Alan M. Jacobs, as

Trustee for the Creditors' Trust (the "Creditors' Trustee") (collectively, the "Plaintiffs") file this

*Second Amended Class Action Complaint* against James Alexander; William B. Beste; Kathleen

M. Beste; Crestview Capital Management, LLC; Dante P. Meloni; the David M. Bruce Trust; the

Jack Lee Dixon Family Revocable Trust; Josselyn H. Bliss; Nadia Pamoukian; The Sullivan

Family Trust; Texas Fifty Plus, Inc.; the Werner Wachtler Trust; William Michael Tolleson; the

Brian Pardo & Elizabeth Pardo Joint Trust, WROS; Katherine A. Hufstetler; Darwin C. Allred;

Mark G. Anderson; Cody C. Biggs; A.H. Broman; Dorothy Brorman; Steve Brorman; Kim

Butler; Tommy C. Caperton; Danny J. Carr; Richard F. Carter; Russell J. Cepelak; Elizabeth A.

Cline; Anna Conway; Emma Conway; Sara Conway; Clair Crossland; George M. Davidson;

David R. Debusk; Steven B. Deck; Emily D. Dillard; Gerald P. Elder; Steven T. Gibson; Mark

Gilbert; Rex Hidle; James G. Hilton; William Hinds; Geoff B. Horst; Janet K. Horst; Hollis

---

[1] Reorganized Life Partners Holdings, Inc., Reorganized Life Partners, Inc., and Reorganized LPI Financial Services, Inc. (together, the "Reorganized Debtors").

[2] The Creditors' Trust was created as part of the *Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") that was confirmed on November 1, 2016, and went effective on December 9, 2016. *See* Order Confirming Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et al., Pursuant to Chapter 11 of the Bankruptcy Code, In re Life Partners Holdings, Inc., et al., Case No. 15-40289-rfn (Bankr. N.D. Tex.) (the "Bankruptcy Case"), Dkt. No. 3439, entered Nov. 1, 2016 (the "Confirmation Order"). The Effective Date of the Plan was December 9, 2016. *See* Notice of (I) Occurrence of Effective Date, and (II) Certain Related Deadlines, In re Life Partners Holdings, Inc., et al., Case No. 15-40289-rfn (Bankr. N.D. Tex.), Dkt. No. 3615, entered Dec. 9, 2016. Alan M. Jacobs was appointed Creditors' Trustee under the Plan.

Steven Hufstetler; Randal Kasamoto; Andy Lawson; James T. Lee; Elizabeth Leonard; James Leonard; John P. Ley; David W. Lynn; Sean B. Maness; Thomas R. McElroy; William McEwen; Steven H. Minnich; James Mickelson; John R. Murray; Susan Nieder-Cassel; Gary Rhodes; Edwin M. Schroeter; Jacquelyn Schumacher; Kurt Schumacher; John P. Schortal; Gerald J. Slaminski; James Smith; Garland K. Smith; Robert E. Stevens; Earl Stewart; Brad Tomlinson; C. Mark Townsend; Dean Vagnozzi; Charmaine Wages; Robert G. Westrup; Harry J. Wilson; David S. Youzva; Leigh Hilton; Wilfried Knoop; Ellen E. Levinson; Deborah Poarch Day; Michael Borbas; The Andrew Lowell Larson III Trust; Andrew Lowell Larson III; Amanda M. Wooten; Kimberley Ann Jones; Peter J. Running; Gary E. Horsey; Theodore J. Rhodes; William G. Haugen; The Marion D. Woodworth Revocable Trust; Joseph D. Feldman; Mao Bai; Nai Zhang; Geoff Horst and Janet Horst, as Joint Tenants; Dorothy Ng; Lisah Chen; Rafik Bolis; Mora Bolis; Alec Hir; Milton R. Tepas; Robert W. Morgan; Muriel A. Morgan; John Russell Gove; Kuomin G. Tseng; Marilyn N. Swearingin; James R. Demers; Kathleen Pohlid; Sheila C. Short; George B. Stein; Camilla L. Westrup and Charles D. Westrup as Joint Tenants; Charles Scarpellino; The Bradley R. Stienstra And Carol J. Stienstra Trust; Benny Lee Johnson; Cheryl Ann Johnson; Helene Kleban; Randall Cole; Jessica Cole; Caroline L. Crawford; Isabella F. Puleo and Mark A. Puleo, as Joint Tenants; Isabella F. Puleo and Mark A. Puleo, as Custodians for Acacia J. Puleo; Isabella F. Puleo and Mark A. Puleo, as Custodians for Nicolas P. Puleo; Isabella F. Puleo and Brianne L. Puleo, Jr., as Joint Tenants; Isabella F. Puleo, as Custodian for Griffin M. Scrimiege; Isabella F. Puleo and Mark A. Puleo, as Custodians for Dirk M. Puleo; Isabella F. Puleo, as Custodian for Emerson I. Puleo; Mark J. Puleo; Isabella F. Puleo; Chrystal A. Puleo; John Burk; Jay Christofferson; Lillian J. Cawley; Gerald P. Elder; Thomas Roeder Mcelroy and Beverly Jean Mcelroy, as Joint Tenants; Cherlynn Lee Friez; Flora Lee; Marat

Yuspa; Anna Yuspa; Fred J. Mccolland; Dennis Simonian; Philip G. Schaffner; Thomas J. Ryan; Zuan Xing; James E. Gray; Mary A. Gray; William P. Dochterman; Arthur D. Hodde; Franklin D. English; Beverly J. Reed; Marvin Grasty; The Adams Lincoln Trust; Merle G. Wischnofske and Beverly J. Wischnofske, as Joint Tenants; Melchor Balazs; Isabel Balazs; Nathine O. Goldenthal and Elaine S. Goldenthal as Joint Tenants; AQuinas Hobor; Arthur R. Horak; Batrus & Co.; Charles E. Owens and Lois J. Owens as Joint Tenants; Craig Cooke; Emma Sue Bissett Burch; First Southwest Company; For Childrens Sake; Frederic P. Claussen; Frederick Stearns; Gary Samson; George Lemire and Thelma Lemire as Joint Tenants; Gerald Abbott and Marilyn Abbott as Joint Tenants; Ham Long Short Master Fund Ltd.; Jack Gray Jr.; Jack P. Donahue; James C. Karl; James Hallowell III; Jean Fatheree; Jeffrey Brodnick; Joann Dixon; John Berezniak and Ethalia Berezniak as Joint Tenants; John Dicoskey and Dorothy Dicoskey as Joint Tenants; Joseph A. Dionne; Winifred Dignam; Katherine C. Trombatore; Kenneth Morrison and Sara Morrison as Joint Tenants; Lois J. Owens; Louis Campise; Michael Hernandez; P-Flag; Paul H. Pieri; Pearson H. Stewart and Jean Baker Stewart as Joint Tenants; Rachel S. Baker; Richard Shaw; Robert Beading; Robert Sadowski and Norinne Sadowski as Joint Tenants; Robert Wark Jr. as Administrator of the Sally Wark Estate; Stuart Anson; Texas Guardianship Association; UPCH & Co.; and William Wilhelmy and Dorine Wilhelmy as Joint Tenants**;** each both individually and as representatives or members of a class of all others similarly situated (collectively, "<u>Defendants</u>" and including unnamed class members the "<u>Defendant Class</u>")[3], and would respectfully show this Court the following:

---

[3] Specifically excluded from the term "Defendant Class" are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, and Ann M. Gray, as further set forth in the class definitions in paragraphs 265 and 266.

# I.    INTRODUCTION

1.    This adversary proceeding arises from the massive fraud perpetrated by Brian Pardo ("<u>Pardo</u>") and his accomplices.

2.    Life Partners was in the business of marketing and selling investment contracts related to life insurance policies known as viatical settlements or life settlements.  From at least on or about January 1, 2007 through on or about February 1, 2015, Pardo and his accomplices devised and implemented a scheme to defraud investors ("<u>Investors</u>") and to obtain money and property from these Investors by false and fraudulent pretenses, representations, and promises.[4]

3.    Pardo and his accomplices implemented the fraudulent scheme to defraud Investors and the Life Partners Estate[5] through misrepresentations and omissions and in so doing transferred tens of millions of dollars to other entities and individuals.

4.    Defendants and the Defendant Class were beneficiaries of Life Partners' scheme. Since 2008, Defendants and the Defendant Class collectively profited from this scheme through the transfers by Life Partners to Defendants and the Defendant Class of approximately $33.9 million[6] that LPHI fraudulently distributed in the form of illegitimate dividends.

## A.    Life Partners Fraudulent Scheme

5.    Pardo was the CEO of LPI from its incorporation in 1991 until February 2015 and also served as LPHI's President, CEO, and Chairman of the Board from January 2000 until

---

[4] LPHI Bankruptcy Case, Declaration of H. Thomas Moran II in Support of Voluntary Petitions, First Day Motions and Designation as Complex Chapter 11 Case (the "<u>Moran Declaration</u>"), Dkt. No. 347; and *The Trustee's Report Concerning His Investigation of the Debtors' Pre-Petition Business Conduct*, LPHI Bankruptcy Case, Dkt. No. 1584 (the "<u>Report</u>") are incorporated herein by reference.

[5] "<u>Estate</u>" or "<u>Life Partners Estate</u>" refers to the collective bankruptcy estates of LPHI and the Subsidiary Debtors.

[6] This amount may include some transfers to the persons and entity excluded from the Defendant Class, see n. 3, due to the manner in which LPHI paid its dividends.  It is currently unclear the exact amount of dividends transferred from LPHI to the Defendant Class during the relevant time period because some transfers took place through an intermediary holding company. Discovery is needed to identify the exact amount of dividends transferred to the Defendant Class.

January 2015.  Pardo owned more than 50% of LPHI's stock through his family trust (the "Pardo Family Trust")[7] and, through dividends, salaries, and other transfers, he and other accomplices looted the company of monies earned through the fraudulent scheme.

6.     The fraudulent scheme orchestrated by Pardo and his accomplices involves a web of falsities, but a primary element for many years was the sale of investment contracts (through which Investors obtained an interest in the proceeds of a life insurance policy) on the basis of life expectancies ("LEs" or "LE") that were significantly shorter than those provided to Life Partners by independent, third-party LE providers in the industry on the very same insureds.  Life Partners did not disclose to its Investors that it had a longer LE in its possession, nor did it disclose that the doctor that provided LEs to Life Partners was untrained and had no prior experience rendering actuarial LEs.

7.     The LEs Life Partners used to market its investments were far too short in most instances, and as a result of unanticipated premium obligations, the actual cost of the investment for thousands of Investors exceeded what those Investors were told and what they planned for, frequently resulting in severely diminished returns (if any) for Investors and, in some cases, voluntary abandonments of their investments.  The shortened LEs, which at one time generated profits for LPI and Pardo, ultimately led to litigation against Life Partners.

8.     Pardo and other accomplices also misrepresented to Investors the acquisition cost of the investments.  The "acquisition cost" included the amount Life Partners had paid for the policy, the premiums to be escrowed, and fees to Life Partners, its sales agents ("Licensees"), and others.

---

[7] Pardo Family Trust ("PFT") owns Pardo Family Holdings, Ltd. ("PFH"), and PFH owns over 50% of the stock of LPHI.  Upon information and belief, Pardo Family Holdings US, LLC ("PFHUS") was created, and PFT now owns PFHUS, which now owns PFH.  As such, the term "Pardo Family Trust" herein refers to PFT, PFH, and PFHUS collectively.

9.      Specifically, Life Partners hid the egregious amount it charged in fees and commissions from its Investors, never disclosing that roughly one-third of all investment dollars went to fees and commissions paid to Life Partners and its Licensees.  Instead, Investors believed, based on representations of the value of the investments, that their funds were used by Life Partners to purchase the policies and to escrow for anticipated future premiums.  In reality, on average, less than 20% of the proceeds from Investors were used to acquire the policy.  The remaining 80% of the acquisition cost was divided primarily between future premiums and commissions to Licensees and Life Partners.  But because, among other things, Life Partners had misled Investors about the actual LE of the insureds, the Investors' escrowed funds were rarely sufficient to pay the needed premiums.  Investors were therefore frequently called upon to make up the difference, reducing their possible return with every additional premium payment.

10.     Until the filing of LPHI's bankruptcy petition, the fraudulent scheme continued to generate funds that flowed into the pockets of Pardo and other accomplices, at the expense of Life Partners and its Investors.

**B.      Transfers to Defendants**

11.     Defendants and the Defendant Class received transfers of funds from LPHI in the form of dividends from January 2008 through January 2015, totaling approximately $33.9 million (the "Transfers").  Defendants and the Defendant Class are each of those shareholders of LPHI stock who received dividends paid by LPHI[8] to such shareholder, whether directly, through an intermediary holding company, or otherwise, from January 2008 through January 2015.

---

[8] While LPHI made dividend distributions to its shareholders, all funds or monies used for such dividend distributions originated from LPI's business operations and sale of investment contracts.  Specifically, the dividend distributions to Defendants and the Defendant Class consisted of funds or monies transferred from the accounts of LPI to LPHI.

12.     These dividends were fraudulent transfers because Defendants and the Defendant Class exchanged no reasonably equivalent consideration for what they received.   These distributions deprived Life Partners of amounts which otherwise would be available to administer and maintain the life insurance policies at the heart of Life Partners' business for the benefit of the defrauded Investors.

13.     Pardo looted Life Partners (and conspired with family members and other accomplices to do so) even after he knew the business had become insolvent and unsustainable, including by declaring illegitimate dividends, and Defendants and the Defendant Class benefitted from the fraud at the expense of Life Partners and its creditors.   Indeed, three such dividends were declared and paid *after* a federal court jury found LPHI, Pardo, and Life Partners' then-General Counsel, Secretary, and President R. Scott Peden liable for violating the federal securities laws.

14.     As a result, Plaintiffs bring this Complaint to recover the substantial monies transferred to Defendants and the Defendant Class.

## II.     PARTIES

13.     The Creditors' Trust is an entity and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

15.     The Creditors' Trustee is an individual and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

16.     James Alexander is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1900 Fir Street, Pampa, Texas, 79065, or 1530 16th Street NW, #704, Washington, D.C. 20036, or 922 S. Barrington Avenue, Ste. A, Los

Angeles, California 90049 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

17.   William B. Beste is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4317 Country Club Drive, Plano, Texas 75074, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

18.   Kathleen M. Beste is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4317 Country Club Drive, Plano, Texas 75074, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

19.   Crestview Capital Management, LLC is an Illinois limited liability company and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Robert Felsenthal at 716 Oak Street, Winnetka, Illinois 60093, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

20.   Dante P. Meloni is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 109 Ivins Avenue, Merchantville, New Jersey 08109, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

21.   The David M. Bruce Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Perkins Dexter Sinopoli at 501 W. President George Bush Highway, Suite 310, Richardson, Texas 75080, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

22.   The Jack Lee Dixon Family Revocable Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its trustee, Jack Lee Dixon, 5520 Cavendish Court, Plano, Texas 75093, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

23.     Josselyn H. Bliss is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 84 Summer Street, Rehoboth, Massachusetts 02769, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

24.     Nadia Pamoukian is an individual and may can be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7725 Reseda Boulevard, Apt. 208, Reseda, California 91335, or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

25.     The Sullivan Family Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its trustees, Edmond Sullivan or Helen Sullivan, at 2325 Adair Street, San Marino, California 91108, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

26.     Texas Fifty Plus, Inc. is a Texas corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Donald F. Leverett at 2601 Ridgmar Plaza, Ste. 10, Fort Worth, Texas 76116, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

27.     The Werner Wachtler Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its trustee at 2625 N. Kostner Avenue, Chicago, Illinois 60639, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

28.     William Michael Tolleson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 142 Paschall Road, Sunnyvale, Texas 75182, or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

29.     The Brian Pardo & Elizabeth Pardo Joint Trust, WROS, is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Brian Pardo or Elizabeth Pardo, at 908 Arlington, Waco, Texas 76712, or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

30.     Katherine A. Hufstetler is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 18 Glenbrook Circle, Lucas, Texas 75002 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

31.     Darwin C. Allred is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 975 Canterbury Drive, Logan, Utah 84321 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

32.     Mark G. Anderson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1350 W. Northwest Highway, Suite 300, Mt. Prospect, Illinois 60056 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

33.     Cody C. Biggs is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6354 Oak Cluster Drive, Greenwell Springs, Louisiana, 70739 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

34.     A.H. Brorman is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3699 County Road 26, Vega, Texas 79092 or pursuant to the Federal Rules of Civil Procedure wherever he/she may be found.

35.     Dorothy Brorman is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3699 County Road 26, Vega, Texas 79092 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

36.     Steve Brorman is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1802 Apache, Dalhart, Texas 79022 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

37.     Kim Butler is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 22790 Highway 259 S., Mt. Enterprise, Texas 75681 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

38.     Tommy C. Caperton is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1633 Boundbrook Lane, Irving, Texas 75060 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

39.     Danny J. Carr is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3426 United Lane, Frisco, Texas 75034 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

40.     Richard F. Carter is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1857 West 3rd Avenue, Durango, Colorado 81301 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

41.     Russell J. Cepelak is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4304 Hillshire Court, Plano, Texas 75093 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

42.     Elizabeth A. Cline is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3924 NE 135th Street, Seattle, Washington 98125 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

43.     Anna Conway is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 311 W. Water, PO Box 2, Teutopolis, Illinois 62467 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

44.     Emma Conway is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 311 W. Water, PO Box 2, Teutopolis, Illinois 62467 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

45.     Sara Conway is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 311 W. Water, PO Box 2, Teutopolis, Illinois 62467 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

46.     Clair Crossland is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 25067, Dallas, Texas 75225 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

47.     George M. Davidson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 841 County Road 320, Florence, Alabama 35634 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

48.     David R. DeBusk is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 1388, Plainview, Texas 79073 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

49.     Steven B. Deck is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2012 Cindy Lane, Denton, Texas 76207 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

50.     Emily D. Dillard is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8701 E. Spanish Barb Trail, Scottsdale, Arizona 85258 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

51.     Gerald P. Elder is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 120 Weeping Willow Way, Tyrone, Georgia 30290 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

52.     Steven T. Gibson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4940 NE 28 Avenue, Lighthouse Point, Florida 33064 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

53.     Mark Gilbert is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 67 Browns Lane, Old Lyme, Connecticut 06371 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

54.     Rex Hidle is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3315 Sunlight Hill Lane, Spring, Texas 77386 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

55.     James G. Hilton is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1800 Emerson Lane, Denton, Texas 76209 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

56.     William Hinds is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 722 Mustang Drive, Fairview, Texas 75069 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

57.     Geoff B. Horst is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6802 Cub Lane, Sanger, Texas 76266 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

58.     Janet K. Horst is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6802 Cub Lane, Sanger, Texas 76266 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

59.     Hollis Steven Hufstetler is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 18 Glenbrook Circle, Lucas, Texas 75002 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

60.     Randal Kasamoto is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 272 Green Peace Court, Henderson, Nevada 89052 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

61.     Andy Lawson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1509 Pecan Valley Court, Corinth, Texas 76210 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

62.     James T. Lee is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1426 Brazos Blvd., Lewisville, Texas 75077 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

63.     Elizabeth Leonard is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7508 Hughes Drive, Plano, Texas 75024 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

64.     James Leonard is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7508 Hughes Drive, Plano, Texas 75024 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

65.     John P. Ley is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 444 NW Fremont Street, Camas, Washington 98607 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

66.     David W. Lynn is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2101 Crestline Drive, Abilene, Texas 79602 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

67.     Sean B. Maness is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 218 Molina Street, Sunnyvale, Texas 75182 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

68.     Thomas R. McElroy is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 807 Glen Abbey Drive, Mansfield, Texas 76063 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

69.     William McEwen is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 17838 161st Avenue SE, Renton, Washington 98058 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

70.     Steven H. Minnich is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 171 Pine Hill Road, Newport, Washington 99156 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

71.     James Mickelson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 7309, Sheridan, Wyoming 82801 or 360

Meade Creek Road, Sheridan, Wyoming 82801 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

72.     John R. Murray is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 553 Peru Road, Sonoma, California 95476 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

73.     Susan Nieder-Cassel is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7612 Meadowhaven Drive, Dallas, Texas 75254 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

74.     Gary Rhodes is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2504 S. Veterans Drive, Effingham, Illinois 62401 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

75.     Edwin M. Schroeter is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4450 Evelyn Street, Amarillo, Texas 79109 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

76.     Jacquelyn Schumacher is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 673 Northfield Lane, Harleysville, Pennsylvania 19438 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

77.     Kurt Schumacher is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 673 Northfield Lane, Harleysville, Pennsylvania 19438 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

78. John P. Schortal is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 712 Boulder Way, Jerseyville, Illinois 62052 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

79. Gerald J. Slaminski is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 422 Columbine Way, Port Angeles, Washington 98362 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

80. James Smith is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6520 Old Gate Road, Plano, Texas 75024 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

81. Garland K. Smith is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 109 North Goliad, Rockwall, Texas 75087 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

82. Robert E. Stevens is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8006 Kings Ct., Rowlett, Texas 75089 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

83. Earl Stewart is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 915 Bison Trail, Dallas, Texas 78208 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

84. Brad Tomlinson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3966 Hwy 2561, Hamilton, Texas 76531 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

85.     C. Mark Townsend is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2923 Moss Creek Court, McKinney, Texas 75070 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

86.     Dean Vagnozzi is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 114 Ithan Lane, Collegeville, Pennsylvania 19426 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

87.     Charmaine Wages is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8390 E. Via de Ventura, #F-110, Scottsdale, Arizona 85258 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

88.     Robert G. Westrup is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4622 Oso Parkway, Corpus Christi, Texas 78413 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

89.     Harry J. Wilson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1125 West Celeste Avenue, Fresno, California 93711 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

90.     David S. Youzva is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2706 Big Oaks Drive, Garland, Texas 75044 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

91.     Leigh Hilton is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1800 Emerson Lane, Denton, Texas 76209 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

92.     Wilfried Knoop is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1210 2nd Street, Columbia City, Oregon 97018 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

93.     Ellen E. Levinson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 300181, Denver, Colorado 80203 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

94.     Deborah Poarch Day is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 17420 Fox Branch Road, Carson, Virginia, 23830 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

95.     Michael Borbas is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4391 Calle de Farrar, San Jose, California 95118 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

96.     The Andrew Lowell Larson III Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Andrew Lowell Larson III at 1509 Pecan Valley Court, Corinth, Texas 76210 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

97.     Andrew Lowell Larson III is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1509 Pecan Valley Court, Corinth, Texas 76210 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

98.     Amanda M. Wooten is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 311 Longhorn, Wolfforth, Texas 79381 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

99.     Kimberly Ann Jones is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1302 Chestnut Road, Mansfield, Texas 76063 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

100.     Peter J. Running is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5222 Bayshore Drive, Athens, Texas 75752 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

101.     Gary E. Horsey is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 23828 Annie Crow Road, Chestertown, Maryland 21620 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

102.     Theodore J. Rhodes is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 16024 W. Water Street, Teutopolis, Illinois 62467 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

103.     William G. Haugen is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 16320 Cutten Drive, Guerneville, California 95446 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

104.     The Marion D. Woodworth Revocable Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Marion D. Woodworth at 2402 Berwyn Road, Wilmington, Delaware 19810 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

105.     Joseph D. Feldman is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7400 Viscount Blvd., Suite 207, El Paso, Texas 79925 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

106.     Mao Bai is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1381 S. Magnolia Lake Lane, Houston, Texas 77083 or pursuant to the Federal Rules of Civil Procedure wherever he/she may be found.

107.     Nai Zhang is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1381 S. Magnolia Lake Lane, Houston, Texas 77083 or pursuant to the Federal Rules of Civil Procedure wherever he/she may be found.

108.     Geoff Horst and Janet Horst, as joint tenants, are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6802 Cub Lane, Sanger, Texas 76266 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

109.     Dorothy Ng is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 20922 Sherman Drive, Castro Valley, California 94552 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

110.     Lisah Chen is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 971 Rolling Oaks Lane, Collierville, Tennessee 38017 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

111.     Rafik Bolis is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5059 Cedar Springs Court, Burlington, Ontario, Canada L7P 0B5 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

112.     Mora Bolis is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5059 Cedar Springs Court, Burlington, Ontario, Canada L7P 0B5 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

113.    Alec Hir is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 31047 Genstar Road, Hayward, California 94544 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

114.    Milton R. Tepas is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1511 Heron Drive, Sun City Center, Florida 33573 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

115.    Robert W. Morgan is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 111 Klemme Road, Sprakers, New York 12166 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

116.    Muriel A. Morgan is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 110 Klemme Road, Sprakers, New York 12166 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

117.    John Russell Gove is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3106 Ridge Drive, Bonham, Texas 75418 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

118.    Kuomin G. Tseng is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2931 Tory Hill Lane, Sugar Land, Texas 77478 or pursuant to the Federal Rules of Civil Procedure wherever he/she may be found.

119.    Marilyn N. Swearingin is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 23598 Walnut Hollow Court, Jerseyville, Illinois 62052 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

120.     James R. Demers is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7317 Quail Woods Road, Wilmington, North Caroline or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

121.     Kathleen Pohlid is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 505 Stonegate Place, Brentwood, Tennessee 37027 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

122.     Sheila C. Short is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 11799 Cunningham Blvd, Lawrenceville, Illinois 62439 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

123.     George B. Stein is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 7948 Sausalito Place, Alexandria, Virginia 22309 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

124.     Camilla L. Westrup and Charles D. Westrup as Joint Tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 13331 White Oak Landing, Houston, Texas 77065 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

125.     Charles Scarpellino is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 56 Audubon Avenue, Providence, Rhode Island 02908 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

126.     The Bradley R. Stienstra and Carol J. Stienstra Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through Bradley R. Stienstra at 7652 Park Bay Drive, Huntington Beach, California 92648 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

127.     Benny Lee Johnson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5814 Spurwood Court, Colorado Springs, Colorado 80918 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

128.     Cheryl Ann Johnson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5814 Spurwood Court, Colorado Springs, Colorado 80918 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

129.     Helene Kleban is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1828 Glendon Avenue, #102, Los Angeles, California 90025 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

130.     Randall Cole is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 305 River Ridge Drive, Gatesville, Texas 76528 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

131.     Jessica Cole is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 305 River Ridge Drive, Gatesville, Texas 76528 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

132.     Caroline L. Crawford is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1280 Flatt Circle, Cookeville, Tennessee 38501 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

133.     Isabella F. Puleo and Mark A. Puleo as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

134. Isabella F. Puleo and Mark A. Puleo, as custodians for Acacia J. Puleo are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

135. Isabella F. Puleo and Mark A. Puleo, as custodians for Nicholas P. Puleo are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

136. Isabella F. Puelo and Brianne L. Puleo, Jr. as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

137. Isabella F. Puleo as custodian for Griffin M. Scrimiege is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

138. Isabella F. Puleo and Mark A. Puleo, as custodians for Dirk M. Puleo are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

139. Isabella F. Puleo, as custodian for Emerson I. Puleo is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane,

Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

140.    Mark J. Puleo is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

141.    Isabella F. Puleo is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

142.    Chrystal A. Puleo is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 4 Eunice Lane, Thornwood, New York 10594 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

143.    John Burk is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 3808 Hyacinth Avenue, Baton Rouge, Louisiana 70808 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

144.    Jay Christofferson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1542 W. Masill Avenue, Fresno, California 93711 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

145.    Lillian J. Cawley is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1911 Detroit Road, Suite 100, Rocky River, Ohio 44116 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

146.    Gerald P. Elder is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 123 Weeping Willow Way, Tyrone, Georgia 30290 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

147.    Thomas Roeder McElroy and Beverly Jean McElroy as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 807 Glen Abbey Drive, Mansfield, Texas 76063 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

148.    Cherlynn Lee Friez is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 15650 94th Street NE, Elk River, Minnesota 55330 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

149.    Flora Lee is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 938 Granite Street, Braintree, Massachusetts 02184 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

150.    Marat Yuspa is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2653 E. 19th Street, Brooklyn, New York 11235 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

151.    Anna Yuspa is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2653 E. 19th Street, Brooklyn, New York 11235 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

152.    Fred J. McColland is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 220 N. Rancho Place, El Sobrante, California 94083 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

153.    Dennis Simonian is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 860 Rainbow Drive, Glendora, California 91741 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

154.     Philip G. Schaffner is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 245 Hidden Bluff Road, Cedar Grove, Wisconsin 53013 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

155.     Thomas J. Ryan is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1893 East 12th Street, Brooklyn, New York 11229 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

156.     Zuan Xing is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 584 W. 22nd Street, Upland, California 91784 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

157.     James E. Gray is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 722, West Falmouth, Massachusetts 02574 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

158.     Mary A. Gray is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 722, West Falmouth, Massachusetts 02574 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

159.     William P. Dochterman is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1810 Forever Point, Horseshoe Bend, Arkansas 72512 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

160.     Arthur D. Hodde is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 293254, Lewisville, Texas 75029 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

161.    Franklin D. English is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5123 Crown Cypress Street, Las Vegas, Nevada 89149 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

162.    Beverly J. Reed is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6511 Rhea Avenue, Reseda, California 91335 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

163.    Marvin Grasty is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1404 Boyd Drive, Palestine, Texas 75801 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

164.    The Adams Lincoln Trust is a trust and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its trustee J. Cushing-Murray at 6768 Golf Club Drive, Longmont, Colorado 80503 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

165.    Merle G. Wischnofske and Beverly J. Wischnofske as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1366 Terrace Court, East Wenatchee, Washington 98802 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

166.    Melchor Balazs is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 7303, Berkeley, California 94707 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

167.    Isabel Balazs is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 7303, Berkeley, California 94707 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

168.    Nathine O. Goldenthal and Elaine S. Goldenthal as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 17233 N. 60th Place, Scottsdale, Arizona 85254 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

169.    John S. Muratore is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6366 Silent Harbor Drive, Huntington Beach, California 92648 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

170.    Ronald Larry Hankins is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 515 Yaupon Drive, Garland, Texas 75044 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

171.    Jack L. Dixon is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5520 Cavendish Court, Plano, Texas 75093 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

172.    Ester Cone is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1 Box 226, Eagle Lake, Texas 77434 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

173.    Aquinas Hobor is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1355 B. Lawrenceville Road, Lawrenceville, New Jersey 06848 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

174.    Arthur R. Horak is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 17 Buckland Lane, Hicksville, New York 11801 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

175.     Batrus & Co. is a trust and may be served with process pursuant to Federal Rule of Bankruptcy Procedure 7004 c/o Deutsche Bank at PO Box 706 Church Street Station, New York, New York 10008 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

176.     Charles E. Owens and Lois J. Owens as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 324 Olive Street, Westville, New Jersey 08093 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

177.     Craig Cook is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at Box 192, Hale Center, Texas 79401 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

178.     Emma Sue Bissett Burch is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 23107 Isthmus Cove Court, Katy, Texas 77494 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

179.     First Southwest Company is a corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Capitol Corporate Services, Inc. at 206 E. 9th Street, Suite 1300, Austin, Texas 78701 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

180.     For Children's Sake is a corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Beverly J. Ott at 109 Raley Road, Cedar Park, Texas 78613 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

181.     Frederic P. Claussen is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 132, Cotuit, Massachusetts 02635 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

182.     Gary Samson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5708 Malvern Avenue, Philadelphia, Pennsylvania 19131 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

183.     George Lemire and Thelma Lemire as Joint Tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 57 South Street, Planville, Massachusetts 02762 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

184.     Gerald Abbott and Marilyn Abbott as Joint Tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 8611 E. Calle Bolivar, Tuscon, Arizona 85715 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

185.     The Ham Long Short Master Fund Ltd. is a limited partnership and may be served with summons pursuant to the Federal Rule of Bankruptcy Procedure 7004 at 104 Field Point Road, 3rd Floor, Attn: Holden Capital Management LLC, Greenwich, Connecticut 06830 or pursuant to the Federal Rules of Civil Procedure wherever it may be found. .

186.     Jack Gray, Jr. is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1711 N. 23, McAllen, Texas 78501 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

187.    Jack P. Donahue is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6638 Crown Ridge, San Antonio, Texas 78239 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

188.    James C. Karl is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1944 County Road 297, Sargent, Texas 77414 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

189.    James Hallowell III is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 17 Gay Street #6, Cambridge, Massachusetts 02138 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

190.    Jean Fatheree is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2711 Briarhurse #22, Houston, Texas 77057 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

191.    Jeffrey Brodnick is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 11037 Harbor Yacht Court, Unit 201, Fort Meyers, Florida 33908 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

192.    Joann Dixon is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10447 Moccasin Gap Road, Tallahassee, Florida 32308 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

193.    John Berezniak and Ethelia Berezniak as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 514 Wayne Avenue, Elwood City, Pennsylvania 16117 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

194.    John Dicoskey and Dorothy Dicoskey as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 2511 Nature Bend Lane, Carrollton, Texas 75006 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

195.    Joseph A. Dionne is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6263 Blue Baneberry Lane, Greenacres, Florida 33463 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

196.    Winifred Dignnam is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 1473 Red Oak Lane, Port Charlotte, Florida 33948 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

197.    Katherine C. Trombatore is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 727 Pizer, Houston, Texas 77009 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

198.    Kenneth Morrison and Sara Morrison as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 13 Hartford Circle, Andover, Massachusetts 01810 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

199.    Lois J. Owens is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 324 East Olive Street, Westville, New Jersey 08093 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

200.    Louis Campise is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 10607 Russett Street, Houston, Texas 77042 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

201.    Michael Hernandez is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 655 North Brea Blvd., Apt. 56, Brea, California 92821 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

202.    P-Flag is a corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 through its registered agent Jerry Bradford at 507 Jefferson, Waco, Texas 76701 or at 3120 Iverness Drive, Attn: Valerie S. Fallas, Waco, Texas 76710 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

203.    Paul H. Pieri is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 5223 Imohene, Houston, Texas 77096 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

204.    Pearson H. Stewart and Jean Baker Stewart as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 750 Weaver Dairy Road, #1212, Chapel Hill, North Carolina 27514 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

205.    Rachel S. Baker is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 11828 Groham, Apt. 3, Los Angeles, California 90049 or pursuant to the Federal Rules of Civil Procedure wherever she may be found.

206.    Richard Shaw is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 70 Stanson Drive, N. Attleborough, Massachusetts 02760 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

207.    Robert Beading is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 6600 Constitution Blvd., Apt. 505, Portage, Michigan 49204 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

208.    Robert Sadowski and Norrine Sadowski are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 185 Barthel Avenue, Gardner, Massachusetts 01440 or pursuant to the Federal Rules of Civil Procedure wherever they may be found.

209.    Robert Wark Jr. as Administrator of the Sally Wark Estate is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 647 Bay Avenue, Ocean City, New Jersey 08226 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

210.    Stuart Anson is an individual and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 1683, Brewster, Massachusetts 02631 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

211.    Texas Guardianship Association is a corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at PO Box 24037, Attn: Becky Okuma, Waco, Texas 76702 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

212.    UPCH & Co. is a corporation and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at One Wall Street, 3rd Floor, Receive Window C, c/o Melton Security for ACS UPCH Acct. No. AUYF0142702, New York, New York 10286 or pursuant to the Federal Rules of Civil Procedure wherever it may be found.

213.     William Wilhelmy and Dorine Wilhelmy as joint tenants are individuals and may be served with summons pursuant to Federal Rule of Bankruptcy Procedure 7004 at 15 Farrel Street, Seymour, Connecticut 06483 or pursuant to the Federal Rules of Civil Procedure wherever he may be found.

### III.    JURISDICTION AND VENUE

214.     This Court has jurisdiction over this adversary proceeding.  28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this Court.  28 U.S.C. §§ 1408 and 1409.

215.     The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 541(a), 544, 547, 548, 550, and 551 and Bankruptcy Rule 7023, incorporating by reference Federal Rule of Civil Procedure 23.

216.     Plaintiffs have standing to bring these claims pursuant to the Bankruptcy Code, including 11 U.S.C. § 101 *et seq.* and sections 323(b), 704(a)(1), and 1107(a), because, among other reasons, Life Partners incurred losses as a result of the claims set forth herein and assigned its claims to the Plaintiffs.

### IV.    ASSIGNED CLAIMS

217.     As of the Effective Date (on December 9, 2016) of the Plan, the Estates assigned all of their right, title, and interest in certain claims, pending litigation, and other causes of action (the "Causes of Action") to the Creditor's Trust.  Thus, as of this date, the Creditors' Trust was assigned the Causes of Action belonging to the Reorganized Debtors against the Defendants (the "Assigned Claims").[9]

---

[9] Causes of Action belonging to Investors were also assigned to the Court.  *See Garner v. Life Partners, Inc. et al.*, Case No. 4:16-CV-212-A (N.D. Tex.), Dkt. No. 106, Corrected Exhibit 2 (the "Class Action Settlement Agreement"); *In re Life Partners Holdings, Inc.*, Case No. 15-40289-RFN-11 (Bankr. N.D. Tex.), Dkt. No. 2364-3.

218. This action, previously captioned *Moran v. Alexander, et al.*, Adv. Pro. No. 16-04036 in the United States Bankruptcy Court for the Northern District of Texas, and all of the plaintiffs' claims therein, was included in the Assigned Claims.

219. Pursuant to the Confirmation Order, Jacobs was appointed as Trustee of the Creditors' Trust.

220. The Creditors' Trustee will assert the fraudulent transfer, preferential transfer, and disallowance claims, defined herein, against the Defendants on behalf of the Estates.

## V.    FACTUAL BACKGROUND

### A.    Procedural History

221. On January 20, 2015 (the "LPHI Petition Date"), LPHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") thereby commencing its bankruptcy case (the "LPHI Bankruptcy Case").

222. On January 30, 2015, the Office of the United States Trustee (the "U.S. Trustee") formed an official committee of unsecured creditors (the "LPHI Committee") in the LPHI Bankruptcy Case.

223. Shortly after the LPHI Petition Date, the Securities and Exchange Commission (the "SEC") filed its *Motion Under 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee*.[10]  On January 26, 2015, the U.S. Trustee filed its *Motion for an Order Directing the Appointment of a Chapter 11 Trustee*.[11]  The LPHI Committee joined the SEC's and U.S. Trustee's requests to appoint a Chapter 11 trustee and on March 10, 2015, the Court granted the request.[12]

---

[10] LPHI Bankruptcy Case, Dkt. No. 14 (the "SEC Trustee Motion").

[11] LPHI Bankruptcy Case, Dkt. No. 27.

[12] LPHI Bankruptcy Case, Dkt. No. 186.

224. On March 13, 2015, the U.S. Trustee appointed H. Thomas Moran II ("Moran" or the "Chapter 11 Trustee") as the chapter 11 Trustee in the LPHI Bankruptcy Case,[13] and March 19, 2015, this Court affirmed Moran's appointment.[14]

225. On April 7, 2015, in the Subsidiary Filing Order, this Court authorized the Chapter 11 Trustee to (a) take the necessary steps to install the Chapter 11 Trustee as the sole director of LPI and LPIFS and (b) take all steps necessary to place LPI, LPIFS, and any other direct or indirect subsidiaries or affiliates of LPHI as the Chapter 11 Trustee determined appropriate to file voluntary chapter 11 bankruptcy petitions.[15]

226. After entry of the Subsidiary Filing Order, (a) the Chapter 11 Trustee became the sole director of LPI and LPIFS; and (b) LPHI's business, as well as that of the Subsidiary Debtors, has continued to operate under the direction of the Chapter 11 Trustee.[16]

227. On May 19, 2015 (the "Subsidiary Petition Date"), the Subsidiary Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating their bankruptcy cases (the "Subsidiary Bankruptcy Cases").   On the Subsidiary Petition Date, the Subsidiary Debtors filed their Emergency Motion for Joint Administration requesting that the Court jointly administer the LPHI Bankruptcy Case and the Subsidiary Bankruptcy Cases.

228. On May 22, 2015, this Court granted the Subsidiary Debtors' request to jointly administer the LPHI Bankruptcy Case and the Subsidiary Bankruptcy Cases (collectively, these "Bankruptcy Cases" or "Cases").[17]

---

[13] LPHI Bankruptcy Case, Dkt. No. 205.

[14] LPHI Bankruptcy Case, Dkt No. 225; LPHI Bankruptcy Case, Dkt. No. 229.

[15] *See* LPHI Bankruptcy Case, Dkt. No. 261.

[16] *See* LPHI Bankruptcy Case, Dkt. No. 261.

[17] LPHI Bankruptcy Case, Dkt. No. 367.

229.    On November 1, 2016, the Plan was confirmed.[18]   The Plan went effective on December 9, 2016.[19]

## B.    The Scheme to Defraud

230.    Immediately upon the Chapter 11 Trustee's appointment, the Chapter 11 Trustee began to discharge his fiduciary duties, including launching an investigation into the business practices of Life Partners.[20]   In the SEC Action, the District Court found, among other things, that "Defendants [which include Pardo and Peden] knowingly and recklessly violated securities laws of this nation."[21]   The Chapter 11 Trustee's investigation included an analysis of the Life Partners business enterprise and prior business practices, with a particular emphasis on investigating the allegations that resulted in the judgment entered in the SEC Action and led to his appointment.[22]

231.    As a result of his investigation, the Chapter 11 Trustee concluded that Pardo and other Life Partners executives devised and executed a wide-ranging scheme through Life Partners to defraud its Investors.[23]   This scheme was led and perpetrated by Pardo.

232.    The Life Partners enterprise was built by Pardo and those acting in concert with him as a vehicle for profiting himself and other insiders at the expense of tens of thousands Investors, who were exploited, lied to, and misled.   Many of the Investors who were hurt the worst are elderly Americans who relied on Pardo and his accomplices when they invested a material part of or, in some cases, all of their life savings with Life Partners.

---

[18] LPHI Bankruptcy Case, Dkt. No. 3439.

[19] LPHI Bankruptcy Case, Dkt. No. 3615.

[20] *Id.* at ¶ 40.

[21] Final Judgment Order, SEC Action, Dkt. No. 304.

[22] Moran Declaration, at ¶ 41.

[23] *Id.* at ¶ 42.

233.   Life Partners sold its investment contracts by misleading Investors and generating expectations of "double digit returns" that would be realized within a short period of time after the investment was made (typically, within 2 to 4 years).  The LEs that Life Partners used to market its investments were too short in most instances and often were significantly shorter than those provided on the same insureds by independent, third-party LE providers in the industry. Initially, Life Partners did not disclose to its Investors that it had a longer LE in its possession, nor that the doctor that provided LEs to Life Partners for Investor disclosure was untrained and had no qualifications, expertise, or prior experience rendering actuarial LEs.  Life Partners also did not disclose the risks associated with reliance on those LEs or any other LEs.

234.   Because, for most policies, the actual life span of the individuals whose lives are insured under the polices has already exceeded the initial LEs that Life Partners used to sell fractional positions to Investors, the cost of the investment for thousands of Investors has already exceeded what those Investors were told they would have to pay, and what they planned to pay, for their investments.  That cost is steadily increasing over time as premiums continue to come due.

235.   Life Partners did not disclose the significant risks that accompany all life settlement investments, and the investments in "fractional" interests in particular, including having to pay premiums into the future, the limitation of LE reports, and the fact that, unless all Investors who have premium payment obligations relating to a policy continue to pay premiums, the policy may lapse.

236.   Life Partners also hid the amount it charged Investors in fees and commissions, never disclosing that roughly one-third of all investment dollars went to those fees and commissions.  Instead, Investors believed, based on their understanding of the value of the

investments, that Life Partners used their funds to purchase the policies and to escrow for anticipated future premiums.  But because Life Partners had misled Investors about the actual LE of the insureds, the Investors' escrowed funds were rarely sufficient to pay the needed premiums. Investors were therefore frequently called upon to make additional payments, reducing their possible return with each of those payments.

237.    When Investors could not or would not meet the unexpected continuing premium obligations, Life Partners propped up the "distressed policies" by paying premiums with fees taken from new Investors' money.   In Ponzi fashion, the Life Partners business became dependent on an ever-increasing flow of new Investor funds to provide Life Partners with capital sufficient to pay premiums to keep an ever-increasing number of distressed policies in force and maintain appearances that the business model was working in order to encourage new investments.[24]  If Life Partners had not advanced premiums, policies would have begun to lapse, the house of cards that Life Partners had become would have collapsed, and the flow of new money would have dried up.

238.    In addition, funds supposedly escrowed per Investor, per policy, were in fact commingled and, in some instances, one Investor's escrowed funds were used to pay the obligations of other Investors.  Life Partners manipulated escrowed funds for its benefit, without the Investors' knowledge or consent—a practice expressly contrary to Life Partners' representation to Investors that Life Partners had no access to the escrowed funds.

239.    Pardo and his accomplices knew or should have known that:

      a.    the information being given to Investors was replete with misleading statements and omissions;

---

[24] This is the definition of a Ponzi scheme.  *See Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011).

     b.    the Life Partners LEs provided to Investors were significantly short; and

     c.    Investors were unwittingly paying almost one-third of their investment dollars in fees and commissions.

240.    At the height of the scheme, Pardo and his family were taking millions of dollars from Investors as the primary beneficiaries of dividends paid by LPHI, and as recipients of compensation and lavish benefits paid by LPHI.  (Defendants were also beneficiaries of these dividend payments.)  And despite the increasing number of Investors in hardship over time, the architects of the scheme continued to make money at Investors' expense.  For example, when fee income from sales of new investments decreased and became insufficient to keep money flowing into the pockets of Pardo and his accomplices in the manner to which they had become accustomed, they caused Investors to become dispossessed of their investments through so-called "abandonments" or forced sales of their fractional positions.  Pardo and his affiliates "purchased" some of the abandoned contract positions at a drastic discount and then resold those contract positions for profit.  This resulted in losses to the affected Investors, and improperly diverted millions more dollars to Pardo and his accomplices.  The abandonment and resale processes also generated additional fee income for Life Partners, further propping up the business and misleading Investors about the health of the company and the safety of their investments.  They also generated more commissions for Pardo's Licensees, who were instrumental in keeping the new money pipeline flowing and were leading the charge for Life Partners even in the face of its collapse.

241.    Using their glossy brochures, presentations, webinars, and even radio shows, Life Partners' Licensees marketed the investment contracts to thousands of people.  Investor prospects were told they could use their IRAs to invest and many did so, a number investing their

entire life savings in a product they'd been assured was without risk. Investors were sold on likely quick double-digit returns, and fed various kinds of misinformation in the sales process. Life Partners' business strategy was summed up by its General Counsel in reference to a Bible verse, John 20:29:

"*. . . **Blessed are those who have not seen and yet have believed***."[25]

242. The marketing scheme, which included a multi-level, "pyramid" sales approach, encouraged Investors to recommend the Life Partners' investments to their friends, families, and business associates, and enticed them to do so by the promise of sharing in the commissions paid on a sale if they referred the buyer of a fractional position. The "master" Licensees (each atop its own pyramid) received commissions on every sale within their pyramid, and the amount they shared with other Licensees depended on the level of sales made by those underneath them in the hierarchy. In addition to the amounts paid out to Pardo, his family, and close advisors, Pardo facilitated the payment of over $160 million in commissions to Licensees.

243. When Pardo's sources of fraudulent revenue began to dry up, Life Partners instituted a "Platform Services Fee" for most Investors. Life Partners excluded large institutional investors—many of them associated with Pardo and his accomplices—from payment of these fees. The fees, which totaled millions of dollars, were used, among other things, to continue lining the Pardo family's pockets through dividends paid by LPHI—dividends that were also paid to Defendants and the Defendant Class.

244. As Investors became aware of the misrepresentations and their losses, Life Partners became embroiled in litigation and legal costs, and diverted new Investor funds to prop up old investments, and fund litigation, in the variety of ways described in the Report.

---

[25] Exhibit A, February 15, 2010 E-mail from S. Peden to M. Tolleson.

245.     While Pardo and his accomplices lined their own pockets from their investment scheme, Investors suffered.  The state of Life Partners and that of its Investors today starkly contrasts with the words Pardo shared with a friend several years ago:

> This year should be very good for us . . . I have gotten where I really don't care that much. . . . With a $1.00 per year dividend I earn about $7.5 million annually plus my wages and bonuses will add up to another mil.  So, things ain't bad for me![26]

Due to the massive and wide-ranging fraud of Pardo and his accomplices, Investors are not making millions.  Instead, hundreds of millions of Life Partners' Investor dollars have been lost because of the fraud and rampant self-interest and self-dealing of Pardo and those acting in concert with him.

## C.     Life Partners' Insolvency

246.     The company's resources were significantly depleted over time because Life Partners, in the control of Pardo, made repeated, significant cash distributions to Pardo, his family, and other company executives, including Scott Peden and Kurt and Deborah Carr.  Specifically, at the direction of Pardo and other executives, Life Partners declared large dividends, some of which went to the Defendants and the Defendant Class, and paid Pardo and other executives tens of millions of dollars in compensation, profits, and other interests.  These distributions in the form of compensation, bonuses, and dividends to Pardo and others were made by wire transfers.

247.     From 2002 until 2014, LPHI paid approximately $74 million in dividends to its shareholders, including Defendants and the Defendant Class.  Pardo and/or the Pardo Family Trust benefitted from receipt of approximately half that amount with the Defendants and the Defendant Class receiving most of the remainder.  Even after a federal jury found that LPHI,

---

[26] Exhibit B, May 10, 2010 E-mail from B. Pardo.

Pardo, and the then-general counsel for Life Partners, Scott Peden, had violated federal securities laws, LPHI issued three quarterly dividends totaling more than $2.7 million.

248.    In furtherance of the fraudulent scheme and looting of the company, Life Partners diverted portions of the transfers and distributions by wire to various other investments in which Pardo and his family had beneficial ownerships, such as Paget Holdings Ltd.  The looting of the company by Pardo and his accomplices left Life Partners responsible for thousands of policies and with insufficient funds for Life Partners to conduct its day-to-day operations.

249.    The practice of advancing premiums on behalf of Investors also depleted available cash, as did Life Partners' involvement in increasing litigation.

250.    Life Partners directed employees to force distressed Investors into abandoning contract positions when they could not or would not pay premiums.  These forced abandonments went hand-in-hand with the resale platform Life Partners created in 2006.  Initially, when Investors complained that the LEs were running long and that they were unable to pay premiums, Life Partners would offer to repurchase the Investor's contract position, subject to certain conditions.  At roughly the same time Life Partners began to institute abandonments, it created a tertiary market that it lauded as a way for Investors who were unable to make premium calls to be able to resell their investments to other Life Partners Investors, rather than having to abandon them to Life Partners.

251.    With a building storm of financial pressures and need for additional revenues, the so-called "resale market" built steam.  However, the resale market was just another way for Life Partners to create additional fee income.  When an Investor sold its investment on the resale market, Life Partners received 6% of the face value (closer to 12% of the purchase price) as a commission.  Life Partners also viewed the resale platform as bolstering the market for its

"investments." In November 2011, Life Partners even injected certain policies that Life Partners owned for resale to further generate fees and prop up the perception of Life Partners' success.

252.    As even the tactics of forcing abandonments and resales became insufficient to support the illusion of Life Partners' business, Life Partners instituted the Platform Services Fee.

253.    Because of the deceit upon which Pardo's and the Life Partners executives' marketing and investment scheme was based, Life Partners was insolvent long before Pardo and the Life Partners executives plunged LPHI into bankruptcy. In fact, because money tended to flow into Life Partners from Investors and almost immediately out to pay large commissions, executive compensation, bonuses, and dividends, including to Defendants and the Defendant Class, an insufficient amount of capital was retained to fund the necessary ongoing business associated with Life Partners' legal ownership of thousands of life insurance policies.

254.    Pardo's and his accomplices' fraudulent conduct (described above) caused LPHI to violate federal securities laws, resulting in a civil judgment against LPHI in the amount of $38,7000,000.[27] The Chapter 11 Trustee's investigation included an analysis of the Life Partners business enterprise and prior business practices, with a particular emphasis on investigating the allegations that resulted in the judgment entered in the SEC Action and led to the Chapter 11 Trustee's appointment.

**D.    The Defendants and the Transfers**

255.    As a result of the above-described fraudulent scheme, the Defendants and the Defendant Class, among others, benefitted in receiving transfers of monies through dividends (the "Transfers") from the Life Partners Estate, totaling approximately $33.9 million.

---

[27] *See* Final Judgment Order, *SEC v. Life Partners Holdings, Inc., et al.*, Case No. 12-cv-00033-JRN (W.D. Tex.) (the "SEC Action"), Dkt. No. 304.

256.    The Chapter 11 Trustee instituted this suit to claw back the funds of unwitting Investors that were distributed to Defendants and the Defendant Class through the Transfers.

257.    According to Life Partners' records, from 2008 to 2015, LPHI (with funds received or obtained from LPI) made the Transfers to Defendants and the Defendant Class totaling approximately $33.9 million in fictitious profits from the scheme.

258.    After his appointment, the Chapter 11 Trustee's team began performing forensic accounting analyses and uncovered these Transfers.  The Chapter 11 Trustee and his team were not and could not have been aware of the fraudulent nature of any of the transactions involving payments made to Defendants and the Defendant Class until after the Chapter 11 Trustee's appointment.  Thus, the discovery rule, fraudulent concealment, and equitable tolling principles apply to any applicable limitations period.  *See, e.g.*, *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (where the discovery rule shifts the date of the "legal injury" from the time the wrongful action occurred to the time when "[plaintiffs] knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action"); *State v. Allan Constr. Co.*, 851 F.2d 1526, 1528, 1534 (5th Cir. 1988) (holding that acts taken to conceal wrongful conduct and denial of wrongdoing may support the application of fraudulent concealment and reversing the trial court's grant of summary judgment on limitations grounds).

259.    From January 2008 through February 2015, LPHI declared quarterly dividends on its common stock on thirty (30) separate occasions, paying out almost $33.9 million dollars in dividends to shareholders (excluding payments to Pardo and Pardo Family Trust).  Each shareholder that has continuously held LPHI stock since 2008 has been paid a total of $4.06 per share in dividends.  While $4.06 may not be a staggering sum on its own, LPHI had nearly 12

million outstanding shares in January 2008, and over 18.6 million outstanding shares by January
2011.

260.    Specifically, from January 2008 through February 2015, LPHI declared and paid
dividends on the following dates and in the following amounts:

| Date Declared | Record Date | Date Paid | Dividend/ Share | Approximate Shares Outstanding | Total Dividends | Dividends to Shareholders (excl. Pardo and PFH) |
|---|---|---|---|---|---|---|
| 2/8/2008 | 2/29/2008 | 3/14/2008 | 0.06 | 11,960,542 | $ 718,091.91 | $ 419,063.38 |
| 5/21/2008 | 6/1/2008 | 6/16/2008 | 0.07 | 11,887,213 | $ 831,562.73 | $ 483,634.10 |
| 8/7/2008 | 8/31/2008 | 9/15/2008 | 0.07 | 11,887,213 | $ 832,051.33 | $ 485,223.31 |
| 10/22/2008 | 11/30/2008 | 12/15/2008 | 0.08 | 11,887,213 | $ 953,747.17 | $ 562,001.57 |
| 2/24/2009 | 3/6/2009 | 3/16/2009 | 0.07 | 14,952,372 | $ 1,040,034.01 | $ 614,572.19 |
| 5/7/2009 | 5/25/2009 | 6/15/2009 | 0.07 | 14,859,016 | $ - | $ - |
| 5/14/2009 | 5/25/2009 | 6/15/2009 | 0.25 | 14,859,016 | $ 4,754,669.27 | $ 2,809,700.95 |
| 7/27/2009 | 8/7/2009 | 9/15/2009 | 0.25 | 14,859,016 | $ 3,715,339.49 | $ 1,840,339.74 |
| 10/26/2009 | 11/6/2009 | 12/15/2009 | 0.25 | 14,859,016 | $ 3,714,823.28 | $ 2,195,316.78 |
| 1/25/2010 | 2/5/2010 | 3/15/2010 | 0.25 | 14,859,016 | $ 3,714,997.59 | $ 1,839,997.84 |
| 4/26/2010 | 5/7/2010 | 6/15/2010 | 0.25 | 14,915,246 | $ 3,728,938.95 | $ 1,853,939.20 |
| 8/6/2010 | 8/6/2010 | 9/15/2010 | 0.25 | 14,915,246 | $ 3,728,877.00 | $ 1,853,877.00 |
| 9/3/2010 | 10/15/2010 | 10/29/2010 | 0.25 | 14,915,246 | $ 3,728,509.35 | $ 1,853,509.35 |
| 10/21/2010 | 11/5/2010 | 12/15/2010 | 0.25 | 14,915,246 | $ 3,728,227.50 | $ 1,853,228.25 |
| 1/6/2011 | 1/31/2011 | 2/15/2011 | 0.04 | 18,644,057 | $ 746,320.00 | $ 371,320.04 |
| 1/21/2011 | 2/4/2011 | 3/15/2011 | 0.20 | 18,644,057 | $ 3,729,547.81 | $ 1,854,548.01 |
| 5/4/2011 | 5/16/2011 | 6/15/2011 | 0.20 | 18,647,468 | $ 3,732,481.70 | $ 1,857,481.90 |
| 8/11/2011 | 8/26/2011 | 9/15/2011 | 0.20 | 18,647,468 | $ 3,729,141.66 | $ 1,854,141.86 |
| 11/23/2011 | 12/9/2011 | 12/15/2011 | 0.20 | 18,647,468 | $ 3,729,044.40 | $ 1,854,044.60 |
| 2/27/2012 | 3/9/2012 | 3/15/2012 | 0.10 | 18,647,468 | $ 1,865,322.71 | $ 927,822.81 |
| 5/23/2012 | 6/4/2012 | 6/15/2012 | 0.10 | 18,647,468 | $ 1,864,572.30 | $ 927,072.40 |
| 8/8/2012 | 9/3/2012 | 9/26/2012 | 0.10 | 18,647,468 | $ 1,865,623.56 | $ 928,123.66 |
| 12/3/2012 | 12/14/2012 | 12/17/2012 | 0.10 | 18,647,468 | $ 1,864,701.52 | $ 927,201.62 |
| 2/25/2013 | 3/8/2013 | 3/15/2013 | 0.10 | 18,647,468 | $ 1,864,565.40 | $ 927,065.50 |
| 6/4/2013 | 6/14/2013 | 6/17/2013 | 0.05 | 18,647,468 | $ 932,260.15 | $ 463,510.20 |
| 9/6/2013 | 9/17/2013 | 9/20/2013 | 0.05 | 18,647,468 | $ 932,509.06 | $ 463,759.11 |
| 12/17/2013 | 12/30/2013 | 1/3/2014 | 0.05 | 18,647,468 | $ 934,664.78 | $ 465,914.83 |
| 3/4/2014 | 3/14/2014 | 3/18/2014 | 0.05 | 18,647,468 | $ 932,356.51 | $ 463,606.56 |
| 5/28/2014 | 6/9/2014 | 6/16/2014 | 0.05 | 18,647,468 | $ 932,283.69 | $ 463,533.74 |
| 9/2/2014 | 9/15/2014 | 9/17/2014 | 0.05 | 18,647,468 | $ 928,687.24 | $ 462,243.09 |
| **TOTAL DIVIDENDS PAID** | | | | | $ 65,773,952.07 | $ 33,875,793.59 |

261.    Pardo and/or Pardo Family Trust held approximately 50% of the outstanding
shares of LPHI and received approximately $31.9 million in dividends between 2008 and 2015.
The remaining almost $33.9 million in dividends paid were largely received by the Defendants

and the Defendant Class.[28]  The Plaintiffs have attempted to identify as many shareholders as possible.  Those shareholders named in this Second Amended Complaint were identified from: company records, court filings, proofs of claim and other filings in the Bankruptcy Cases, and shareholder communications with the Court or with representatives of the Estates.

262.    "Profits" from the Life Partners fraudulent scheme (*i.e.* Investor funds paid to Life Partners to buy the investment contracts, service the investment, and for fees and commissions) were transferred by or at the direction of Pardo and his accomplices to Defendants and the Defendant Class.  Defendants and the Defendant Class did not provide reasonably equivalent value for the Transfers to LPHI.

263.    Moreover, LPHI (and LPI) was insolvent at the time of, or was rendered insolvent by, or had reasonably small assets or capital in relation to its business or the transaction at the time or as a result of the, the declaration and payment of each of the dividends and Transfers.

264.    The investigation is ongoing, and the Plaintiffs reserve the right to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers.

## VI.    CLASS ACTION ALLEGATIONS

265.    Plaintiffs bring this action against each of the named Defendants and as a class action against the named Defendants individually and as representatives of the following class of persons and entities (collectively the "Defendant Class"):

> All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends at any time from January 2008 through February 2015, whether directly, through an intermediary holding company, or otherwise.  Excluded from the class are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, and Ann M. Gray.

---

[28] *See* note 5, *supra*.

266.    The Defendant Class may be divided into the following subclasses (collectively the "Defendant Subclasses"):

a.    All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time between January 2008 through January 19, 2011, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, and Ann M. Gray (the "2008-2011 Subclass");

b.    All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time from January 20, 2011 through January 19, 2013, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, and Ann M. Gray (the "2011-2013 Subclass");

c.    All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and received dividends paid by LPHI at any time from January 20, 2013 through January 20, 2015, whether directly, through an intermediary holding company, or otherwise.  Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, Harold E. Rafuse, and Ann M. Gray (the "2013-2015 Subclass"); and

d.    All persons or entities who were shareholders of record or beneficial owners of shares of LPHI and who were insiders and received dividends at paid by LPHI from January 20, 2014 through January 20, 2015, whether directly, through an intermediary holding company, or otherwise. Excluded from the subclass are Brian Pardo, Pardo Family Holdings, Ltd., Tad M. Ballantyne, Fred Dewald, and Harold E. Rafuse (the "Insider 2014-2015 Subclass").

267.    This action is maintainable as a defendant class action pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rules of Civil Procedure 23(a) and 23(b)(1).

268.    *Numerosity.*  The members of the Defendant Class and Defendant Subclasses are so numerous that joinder of all members is impracticable.  As of the LPHI Petition Date, LPHI had 18,647,468 issued and outstanding shares of common stock.  Upon information and belief, as

of the LPHI Petition Date, more than 3,000 persons or entities held legal and/or beneficial title to LPHI common stock.  Upon information and belief, almost 50% of LPHI's shares are held through nominees, intermediaries, or brokers, such that Plaintiffs cannot at this time, despite their diligence, determine the identity of each person or entity who has held legal and/or beneficial title to LPHI's common stock during the period January 2008 through February 2015. Further, the members of the Defendant Class and Defendant Subclasses are numerous and geographically dispersed.  For these reasons, the joinder of all members of the Defendant Class and Defendant Subclasses is impracticable.

269.  *Typicality.*  Plaintiffs' claims against the named Defendants, and the named Defendants' anticipated defenses to those claims, are typical of the claims and anticipated defenses of each member of the Defendant Class and the Defendant Subclasses.  Each member of the Defendant Class and Defendant Subclasses received distributions in the form of dividends from LPHI at a time when in fact LPHI had no profits to distribute and which distributions the Plaintiffs are entitled to recover.

270.  *Commonality.*  Questions of law and fact exist that are common to the members of the Defendant Class and Defendant Subclasses and will generate common answers that will drive resolution of this action.  Common questions of law and fact include, but are not limited to, the following:

a.  Whether the declaration and payment of one or more dividends by LPHI constituted or actual or constructive fraudulent transfer under, *inter alia*, 11 U.S.C. §§ 544, 548, 550, 551;

b.      Whether LPHI actually intended the distribution of dividends to hinder, delay, or defraud creditors within the meaning of the Texas Uniform Fraudulent Transfer Act or other applicable fraudulent transfer law;

c.      Whether LPHI received any value, reasonably equivalent value, or fair consideration in exchange for the dividends declared and paid during the period January 2008 through February 2015; and

d.      Whether LPHI was insolvent at the time of, or rendered insolvent by, or had unreasonably small assets or capital in relation to its business or the transaction at the time or as a result of, the declaration and payment of one or more dividends during the period January 2008 through February 2015.

271.    *Adequacy.*  The named Defendants, sued individually and as representatives of the Defendant Class and certain of the Defendant Subclasses, were each shareholders during the relevant time period and received distributions through dividends at a time when LPHI had no profits to distribute.   Each named Defendant is qualified to represent the Defendant Class.  Certain of the named Defendants also are currently known to be qualified to represent the following subclass(es)[29]:

---

[29] The additional named Defendants are expected to be qualified to represent at least one subclass, but additional information is needed to make that final determination.  Plaintiffs reserve the right to supplement the subclass representatives once additional information is obtained.

| Defendant Name | Representative of at Least the Following Subclass |
| --- | --- |
| James Alexander | 2008-2011 Subclass<br>2011-2013 Subclass<br>2013-2015 Subclass |
| William B. Beste | 2008-2011 Subclass |
| Crestview Capital Master, LLC | 2008-2011 Subclass |
| Dante P. Meloni | 2008-2011 Subclass |
| David M. Bruce Trust | 2013-2015 Subclass |
| Jack Lee Dixon Family Revocable Trust | 2013-2015 Subclass |
| Josselyn H. Bliss | 2008-2011 Subclass<br>2011-2013 Subclass<br>2013-2015 Subclass |
| Nadia Pamoukian | 2008-2011 Subclass<br>2011-2013 Subclass<br>2013-2015 Subclass |
| Sullivan Family Trust | 2008-2011 Subclass<br>2011-2013 Subclass<br>2013-2015 Subclass |
| Texas Fifty Plus, Inc. | 2008-2011 Subclass |
| Werner Wachtler Trust | 2008-2011 Subclass<br>2011-2013 Subclass<br>2013-2015 Subclass |
| William Michael Tolleson | 2013-2015 Subclass<br>Insider 2014-2015 Subclass |
| Brian Pardo & Elizabeth Pardo Joint Trust, WROS | Insider 2014-2015 Subclass |

Plaintiffs believe that the interests and defenses of each named Defendant are coincident with, and not antagonistic to, those of the Defendant Class, and with respect to certain named Defendants, those of the Defendant Subclasses listed above. Plaintiffs believe that each of the named Defendants will fairly and adequately protect the interests of the members of the Defendant Class and, with respect to certain named Defendants, those of the Defendant Subclasses listed above. The named Defendants should be appointed, without cost to the Defendant Class, Defendant Subclasses, Plaintiffs, Creditors' Trustee, or Estate, as

representatives of the Defendant Class and, with respect to certain named Defendants, of the Defendant Subclasses identified above.

272.    The Defendants will be adequate and appropriate representatives of the Defendant Class and, with respect to certain of the named Defendants, of the Defendant Subclasses identified above, in the course of and by virtue of their own defense to the Plaintiffs' claims. Each named Defendant has sufficient incentive to vigorously defend against the Plaintiffs' claims, and will fairly and adequately represent the interests of the unnamed members of the Defendant Class and Defendant Subclasses.

273.    This class action is maintainable pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions against individual members of the Defendant Class or Defendant Subclasses would create a risk of inconsistent or varying adjudications with respect to individual class or subclass members that would establish incompatible standards of conduct and results for LPHI.  For example, multiple actions against Defendants and unnamed members of the Defendant Subclasses could result in different determinations on whether the same dividend payment to different shareholders was made for value, or was a fraudulent transfer, and would establish incompatible standards for the Creditors' Trustee in seeking repayment of fraudulent transfers from LPHI's shareholders.

274.    This class action is maintainable pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23(b)(1)(B) because separate actions against each of the individual members of the Defendant Class or Defendant Subclasses and the defenses asserted by each could, as a practical matter, be dispositive of the interests of other members who are not parties or would substantially impair or impede their ability to protect their interests.

## VII.    CLAIMS

**COUNT 1:    Actual Fraudulent Transfer – Tex. Bus. & Comm. Code § 24.005(a)(1) through 11 U.S.C. §§ 544, 550, 551 (against all Defendants, the Defendant Class, and all Defendant Subclasses)**

275.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

276.    Plaintiffs bring this claim against the named Defendants, individually and as representatives of the Defendant Class and the Defendant Subclasses, and against each member of the Defendant Class and each of the Defendant Subclasses.

277.    Plaintiffs seek to avoid Transfers made to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses (as described above) that Life Partners' unsecured creditors could avoid under applicable state law pursuant to, *inter alia*, Section 544(b)(1) of the Bankruptcy Code.  *See* 11 U.S.C. § 544(b)(1).

278.    Life Partners' creditors, or the Investors, could have brought the state law fraudulent transfer claims now asserted by Plaintiffs.

279.    The Transfers were made with the actual intent to hinder, delay, or defraud the Investors and other creditors of Life Partners, demonstrated by, among other things, that:

a.    The Transfers consisted of monies obtained through Life Partners' fraud;

b.    The Transfers occurred after Life Partners was insolvent;

c.    A number of the Transfers occurred both before and after substantial debts were incurred as a part of the SEC Action against LPHI, Pardo, and other accomplices; and

d.    The consideration received by Life Partners for the Transfers to Defendants was not reasonably equivalent in value.

280.    As alleged above, Life Partners made or authorized Transfers totaling approximately $33.9 million to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses during the period 2008 to 2015.

281.    Life Partners' books and records reveal that Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses received approximately $33.9 million in Transfers.

282.    These Transfers to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses could have been avoided by Investors and other creditors under Texas state fraudulent transfer law. TEX. BUS. & COMM. CODE § 24.005(a)(1).

283.    The Transfers could not have been reasonably discovered by the Investors until the Chapter 11 Trustee's investigation revealed the Transfers.  The Chapter 11 Trustee brought this action within one year after the transfer was or reasonably could have been discovered by the Investors.  Plaintiffs brought this action within two years of the LPHI Petition Date.

284.    The claims of the creditors of Life Partners, including the Investors, arose before or within a reasonable time after the Transfers to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses.

285.    Moreover, Life Partners was insolvent at the time of or became insolvent shortly after the Transfers to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses were made.  Specifically, due to the fraudulent scheme of the materially understated LEs and other activities described above, Life Partners was insolvent from the beginning of that scheme.  By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements

and the price at which it sold life settlements to Investors.  With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and ultimately to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses.  In other words, the misstated or fraudulent LEs and resale and abandonment processes propped up the business of Life Partners, and Life Partners was insolvent from the commencement of the use of the LEs.  The pooling and misuse of investor funds and the institution of the Platform Services Fee in 2014 further evidences the insolvency of Life Partners.

286.    Further, Life Partners did not receive consideration that was reasonably equivalent to the amount of monies transferred to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses.

287.    At the time the Transfers were made, actual creditors of the Debtors holding unsecured claims allowable within the meaning of 11 U.S.C. §§ 502 and 544(b) existed.

288.    Therefore, Life Partners' creditors have the right to avoid the Transfers to Defendants under Section 24.005(a)(1) of the Texas Business and Commerce Code, and Plaintiffs can seek to enforce that right under, *inter alia*, Section 544 of the Bankruptcy Code. Plaintiffs should recover all assets wrongfully transferred to Defendants, the unnamed members of the Defendant Class, and the unnamed members of the Defendant Subclasses from 2008 to present in the amount of approximately $33.9 million.

**COUNT 2:**   **Constructive Fraudulent Transfer –Tex. Bus. & Comm. Code § 24.005(a)(2) through 11 U.S.C. §§ 544, 550, 551 (against Defendant representatives and named or unnamed members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass, *see* ¶ 271)**

289.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

290.   Plaintiffs bring this claim against the named Defendants, individually and as representatives of the Defendant Class who received a dividend from 2011 to 2015 and as representatives of each of the Defendant Subclasses they belong to—as described in paragraph 271—and against each unnamed member of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass.

291.   Life Partners made or authorized Transfers (as described above) totaling approximately $15.2 million to Defendants, the named and unnamed members of the Defendant Class, and the named and unnamed members of the Defendant Subclasses from 2011 to 2015.

292.   Life Partners' books and records reveal that representatives and members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass received approximately $15.2 million in Transfers from 2011 to 2015.

293.   The Debtors had an interest in the property transferred to members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass.

294.   These Transfers to members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass were fraudulent as to the Investors and other creditors of Life Partners.

295.   Life Partners did not receive reasonably equivalent value in exchange for these Transfers, and the Investors or other creditors could avoid them under Texas state fraudulent transfer law.  TEX. BUS. & COMM. CODE § 24.005(a)(2).

296.   At the time of the Transfers, Life Partners was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business.

297.     At the time of the Transfers, Life Partners intended to incur, or believed that it would incur, debts beyond its ability to pay as they became due.

298.     Moreover, Life Partners was insolvent or became insolvent shortly after the Transfers to members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass were made.   Specifically, due to the fraudulent scheme of the materially understated LEs and other activities described above, Life Partners was insolvent from the beginning of that scheme.   By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the higher price at which it sold life settlements to Investors.   With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to members of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass and to its own "profit" pool.   In other words, the misstated or fraudulent LEs and resale and abandonment processes propped up the business of Life Partners, and Life Partners was insolvent from the commencement of the use of the LEs.   The pooling and misuse of investor funds and the institution of the Platform Services Fee in 2014 further evidences the insolvency of Life Partners.

299.     At the time the Transfers were made, actual creditors of the Debtors holding unsecured claims allowable within the meaning of 11 U.S.C. §§ 502 and 544(b) existed.

300.     Therefore, Plaintiffs should recover amounts paid to each member of the 2011-2013 Subclass, the 2013-2015 Subclass, and the Insider 2014-2015 Subclass and described herein from 2011 to 2015 in an amount of approximately $15.2 million.

**COUNT 3:     Actual Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(A), 550, 551 (against Defendant representatives and named or unnamed members of the 2013-2015 Subclass and the Insider 2014-2015 Subclass, *see* ¶ 271)**

301.     Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

302.     Plaintiffs bring this claim against the named Defendants, individually and as representatives of the Defendant Class who received a dividend during the two years preceding the LPHI Petition Date and as representatives of the 2013-2015 Subclass and the Insider 2014-2015 Subclass as described in paragraph 271 or to the extent they belong to those Subclasses, and against each unnamed member of the 2013-2015 Subclass and the Insider 2014-2015 Subclass.

303.     Plaintiffs seek to avoid Transfers made to the 2013-2015 Subclass and the Insider 2014-2015 Subclass (as described above) pursuant to, *inter alia*, Section 548 of the Bankruptcy Code, which Transfers were made with actual intent to hinder, delay, or defraud the Investors and other creditors of the Debtors, demonstrated by, among other things, that:

a.     The Transfers consisted of monies obtained through Life Partners' fraud;

b.     The Transfers occurred after Life Partners was insolvent;

c.     A number of the Transfers occurred both before and after substantial debts were incurred as a part of the SEC Action; and

d.     The consideration received by Life Partners for the Transfers to the 2013-2015 Subclass and the Insider 2014-2015 Subclass was not reasonably equivalent in value.

304.     Life Partners made or authorized Transfers totaling approximately $3.7 million to members of the 2013-2015 Subclass and the Insider 2014-2015 Subclass during the two years preceding the LPHI Petition Date.

305.     Life Partners' books and records reveal that the 2013-2015 Subclass and the Insider 2014-2015 Subclass received approximately $3.7 million in Transfers during the two years preceding the LPHI Petition Date, which came directly from the funds of Investors.

306.    The Debtors had an interest in the property transferred to the 2013-2015 Subclass and the Insider 2014-2015 Subclass.

307.    Moreover, Life Partners was insolvent or became insolvent shortly after the Transfers to the 2013-2015 Subclass and the Insider 2014-2015 Subclass were made. Specifically, due to the fraudulent scheme of the materially understated LEs and other activities described above, Life Partners was insolvent from the beginning of that scheme.  By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors.  With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and ultimately to Defendants.  In other words, the misstated or fraudulent LEs and resale and abandonment processes propped up the business of Life Partners, and Life Partners was insolvent from the commencement of the use of the LEs.  The pooling and misuse of investor funds and the institution of the Platform Services Fee in 2014 further evidences the insolvency of Life Partners.

308.    Therefore, the Transfers to the 2013-2015 Subclass and the Insider 2014-2015 Subclass and described herein should be avoided under, *inter alia*, Section 548 of the Bankruptcy Code.

**COUNT 4:    Constructive Fraudulent Transfer – 11 U.S.C. §§ 548(a)(1)(B), 550, 551 (against Defendant representatives and named or unnamed members of the 2013-2015 Subclass and the Insider 2014-2015 Subclass, *see* ¶ 271)**

309.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

310.    Plaintiffs bring this claim against the named Defendants, individually and as representatives of the Defendant Class who received a dividend during the two years preceding the LPHI Petition Date and as representatives of the 2013-2015 Subclass and the Insider 2014-2015 Subclass as described in paragraph 271 or to the extent they belong to those Subclasses,

and against each unnamed member of the 2013-2015 Subclass and the Insider 2014-2015 Subclass.

311. Life Partners made or authorized Transfers (as described above) totaling approximately $3.7 million to the 2013-2015 Subclass and the Insider 2014-2015 Subclass during the two years preceding the respective LPHI Petition Date and Subsidiary Debtors Petition Date.

312. Life Partners' books and records reveal that the 2013-2015 Subclass and the Insider 2014-2015 Subclass received approximately $3.7 million in Transfers during the two years preceding the LPHI Petition Date, which came directly from the funds of innocent, unwitting Investors.

313. The Debtors had an interest in the property transferred to members of the 2013-2015 Subclass and the Insider 2014-2015 Subclass.

314. Life Partners did not receive consideration that was reasonably equivalent to the amount of property transferred to members of the 2013-2015 Subclass and the Insider 2014-2015 Subclass.

315. At the time of the Transfers, Life Partners was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business.

316. At the time of the Transfers, Life Partners intended to incur, or believed that it would incur, debts beyond its ability to pay as they became due.

317. Moreover, Life Partners was insolvent or became insolvent shortly after the Transfers to the 2013-2015 Subclass and the Insider 2014-2015 Subclass were made. Specifically, due to the fraudulent scheme of the materially understated LEs and other activities

described above, Life Partners was insolvent from the beginning of that scheme.  By utilizing materially misstated LEs, Life Partners generated an artificial difference between the price it paid to purchase life settlements and the price at which it sold life settlements to Investors.  With this generation of significant "profits" through the misstated LEs, Life Partners was able to divert funds to its own "profit" pool and ultimately to the 2013-2015 Subclass and the Insider 2014-2015 Subclass.  In other words, the misstated or fraudulent LEs and resale and abandonment processes propped up the business of Life Partners, and Life Partners was insolvent from the commencement of the use of the LEs.  The pooling and misuse of investor funds and the institution of the Platform Services Fee in 2014 further evidences the insolvency of Life Partners.

318.    Therefore, the Transfers to the 2013-2015 Subclass and the Insider 2014-2015 Subclass should be avoided under, *inter alia*, Section 548 of the Bankruptcy Code.

**COUNT 5:    Preferences – 11 U.S.C. §§ 547, 550, 551 (against Defendant representatives and named or unnamed members of the Insider 2014-2015 Subclass, *see* ¶ 271)**

319.    Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

320.    Plaintiffs seek to avoid Transfers described above against the named Defendants, individually and as representatives of the Insider 2014-2015 Subclass, which Defendants are insiders and received a dividend during the year preceding the LPHI Petition Date as described in paragraph 271, and against each unnamed member of the Insider 2014-2015 Subclass.

321.    Defendant Tolleson, at all times relevant to this proceeding, served as a one of Life Partners' "Master Licensees."  These Master Licensees recruited other Licensees and created networks of other Licensees working under them, and some were closely involved with Life Partners and its executives in the marketing of Life Partners investment contracts and, on information and belief, were personally involved in perpetrating a fraud on Investors.  Defendant

Tolleson, for example, was intimately involved in various aspects of Life Partners' business and marketing to Investors, as well as its implementation of the Platform Services Fee. Defendant Tolleson is therefore an insider for purposes of this claim.[30]

322.    Defendant Brian Pardo & Elizabeth Pardo Joint Trust, WROS, at all times relevant to this proceeding, was an instrumentality controlled by and for the benefit of Brian Pardo and his first (and legal) wife. Brian Pardo is the architect of the fraudulent scheme that ultimately forced Life Partners into bankruptcy. Defendant Brian Pardo & Elizabeth Pardo Joint Trust, WROS is therefore an insider for purposes of this claim.[31]

323.    The Debtors had an interest in these Transfers at the time the Transfers were made.

324.    Such Transfers were paid for or on account of an antecedent debt owed by the Debtors before the transfer was made.

325.    Such Transfers were transferred to and/or for the benefit of the Insider 2014-2015 Subclass, who were creditors of the Debtors.

326.    The Transfers were made to an insider on or within one year before the LPHI Petition Date.

327.    Based on the facts and circumstances of these cases and the presumption of insolvency set forth in section 547(f) of the Bankruptcy Code, each Transfer was made while the Debtors were insolvent.

328.    These Transfers enabled members of the Insider 2014-2015 Subclass to receive more than they would have received under Chapter 7 of the Bankruptcy Code, if these amounts

---

[30] Plaintiffs incorporate by reference as if set forth herein the factual allegations pleaded in the amended complaint in *Moran v. Abundant Income, LLC et al.*, Case No. 15-04110-rfn (Bankr. N.D. Tex.).
[31] Plaintiffs incorporate by reference as if set forth herein the factual allegations pleaded in the second amended complaint in *Moran v. Pardo*, Case No. 4:15-cv-00905-O (N.D. Tex.).

had not been paid, and if each member of the Insider 2014-2015 Subclass had been paid as provided in the Bankruptcy Code.

329. Therefore, the Transfers made during the year preceding the LPHI Petition Date to the named Defendants who are insiders and the Insider 2014-2015 Subclass should be avoided under, *inter alia*, Section 547 of the Bankruptcy Code.

**COUNT 6:   Disallowance of Defendants' Claims - 11 U.S.C. § 502(d) (against all Defendants, the Defendant Class, and all Defendant Subclasses)**

330. Plaintiffs incorporate the preceding paragraphs as if set forth fully herein.

331. To the extent the Transfers to Defendants and the Defendant Class are voidable under Section 544, 547 or 548 of the Bankruptcy Code, the Defendants' claims, and the claims of any named or unnamed member of the Defendant Class or any Defendant Subclass, if any, against the Debtors should be disallowed in whole or in part pursuant to Section 502(d) of the Bankruptcy Code.

## VIII.   ATTORNEYS' FEES

332. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs for their claims against Defendants, the Defendant Class, and the Defendant Subclasses.

333. Specifically, under applicable fraudulent transfer law, Plaintiffs are entitled to attorneys' fees and costs for their claims against Defendants, the Defendant Class, and the Defendant Subclasses. *See* TEX. BUS. & COMM. CODE § 24.013.

## IX.   PRAYER

WHEREFORE, Plaintiffs request the following relief:

(a) That this Court determine that this action may be maintained as a defendant class action under Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23(a) and 23(b)(1);

(b)     That this Court certify the Defendant Class and the Defendant Subclasses defined in this Complaint pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23(a) and 23(b)(1) and designate the named Defendants as the representatives of the Defendant Subclasses indicated in paragraph 271;

(c)     That judgment be entered for Plaintiffs against the named Defendants and all members of the Defendant Class and the Defendant Subclasses for the return of all funds received from Plaintiffs in the form of dividends from 2008 to 2015;

(d)     Pre-judgment and post-judgment interest at the highest rates allowed by law;

(e)     Plaintiffs' attorneys' fees and costs; and

(f)     Any other relief, both special and general, to which Plaintiffs may be justly entitled.

DATED:  January 20, 2017.

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:      */s/ Jennifer Rudenick Ecklund*

David M. Bennett
Texas Bar No. 02139600

Nicole Williams
Texas Bar No. 24041784

Jennifer R. Ecklund
Texas Bar No. 24045626

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214/969-1700
Facsimile: 214/969-1751
David.Bennett@tklaw.com
Nicole.Williams@tklaw.com
Jennifer.Ecklund@tklaw.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon counsel for all parties of record via ECF and upon all currently-named defendants via United States first class mail, postage prepaid on the 20th day of January, 2017.

*/s/ Jennifer Rudenick Ecklund*
Jennifer Rudenick Ecklund

# EXHIBIT A

| | |
|---|---|
| **From:** | Scott Peden <speden@lifepartnersinc.com> |
| **Sent:** | Monday, February 15, 2010 9:16 PM |
| **To:** | miketolleson@aol.com |
| **Subject:** | FW: LPHI |
| **Attachments:** | image001.gif |

Obviously he still doesn't get it.  Its not worth educating him Mike. We just don't have the time to spoon feed him.  I suggest he read John 20:29.


-----Original Message-----
From: Philip Radziwill [mailto:philip.radziwill@ndcapgroup.com]
Sent: Mon 2/15/2010 8:45 PM
To: Scott Peden
Cc: Brian Rossing
Subject: Re: LPHI


Thanks very much Scott. We understand if you cannot send out all of the historical data, but would it be possible for you to send us your annualized returns for your portfolio of policies for the last 1, 3, 5 and 10 year periods? We would need your returns for various historical periods in order to move forward as part of our due diligence process. If this is something you can provide, I think it would make sense to move forward with a trip to Texas after we have received the historical returns. Please let us know when you have a moment. Thank you very much.

Best,

Phil


_____
From: Scott Peden <speden@lifepartnersinc.com>
To: Philip Radziwill
Sent: Mon Feb 15 15:47:42 2010
Subject: LPHI


Phil,

I apologize for the delay in returning your email.  Congratulations on your marriage. I wish you and your wife long and happy lives.  Things have been pretty crazy over the past several days as we have been involved in several deals including securing the endorsement of Ed McMahon's wife's (we had purchased his policy prior to his passing).

What I shared with you in our conference call a few weeks back was accurate; however I did not intend to imply that I would supply all the historical data on all matured policies.  If that is what you understood you were going to get I apologize.  Even with a confidentiality agreement, we would never release such a large quantity of proprietary information. Further, unlike other asset classes, historical information is not a helpful prognostication tool because of limited sample size related to policies which have exceeded their life expectancy when compared with those which matured early.  Thus, the better prognostic tool is one which takes into account a statistically significant sample purchased within similar parameters (including increased maintenance costs and longevity) and applies a random application of longevity experiences to yield various return scenario models.  I only intended to give you these models to show you how these superior returns are achieved.

Mike Tolleson can provide you with a handful of recent "payout notifications" on recent maturities to demonstrate further the unique characteristic which this asset class possess, but you should be aware that these returns result from early maturities and the model's return distribution reflects a randomized distribution of returns and is thus more realistic. Nonetheless, because of the discount, even under very stressed conditions (double the longevity expectation) you are still looking at bank rate returns.  With a statistically significant sample, average returns should in the low to mid double digits.

Prior to making any commitment, I invite you to come to Waco and tour our facility and see our operation first hand. Once you sit down with our Chairman Brian Pardo and me, I feel certain you will leave with enough information to feel like it has been well worth your time.  Many institutions and high net worth individuals have made this trip over the years and are very glad they did. We now have over 26,000 accredited investors and institutions who are clients.  We would appreciate the opportunity to serve you as well.

Scott Peden
President
Life Partners, Inc.
(254) 751-7797
www.lifepartnersinc.com

[cid:image001.gif@01CAAE61.62AF0B20]

App. 076

# EXHIBIT B

| | |
|---|---|
| **From:** | Brian D. Pardo <bpardo@lifepartnersinc.com> |
| **Sent:** | Monday, May 10, 2010 4:40 PM |
| **To:** | 'McLemore, John L.' |
| **Subject:** | RE: Greetings |

Hang on to it John!

**Brian D. Pardo**
***Life Partners, Inc.***



**From:** McLemore, John L. [mailto:John.L.McLemore@conocophillips.com]
**Sent:** Monday, May 10, 2010 4:39 PM
**To:** Brian D. Pardo
**Subject:** RE: Greetings

You bet!  Best education I ever received.  I still have 10,000 shares - so that is ten grand a year in dividends for me (for not doing a damn thing except betting on you).  I'll take Pardo to win every time.  :o)

**From:** Brian D. Pardo [mailto:bpardo@lifepartnersinc.com]
**Sent:** Monday, May 10, 2010 4:36 PM
**To:** McLemore, John L.
**Subject:** RE: Greetings

Thanks John. We had some pretty good times didn't we!

**Brian D. Pardo**
***Life Partners, Inc.***



**From:** McLemore, John L. [mailto:John.L.McLemore@conocophillips.com]
**Sent:** Monday, May 10, 2010 4:35 PM
**To:** Brian D. Pardo
**Subject:** RE: Greetings

Could not happen to a better guy!

1

App. 078

LPCN_00100686

**From:** Brian D. Pardo [mailto:bpardo@lifepartnersinc.com]
**Sent:** Monday, May 10, 2010 4:33 PM
**To:** McLemore, John L.
**Subject:** RE: Greetings

No, there were two companies the regulators shut down…both frauds. You know, with the economy the way it is consumer fraud is abounding. Happily, our business is moving right along. We now have over 25,000 investors and we have done more than 100,000 transactions. This year should be very good for us, but the stock doesn't reflect it. I have gotten where I really don't care that much. With a $1.00 per year dividend I earn about $7.5 million annually plus my wages and bonuses with add up to another mil. So, things ain't that bad for me☺! Brian


**Brian D. Pardo**
*Life Partners, Inc.*



**From:** McLemore, John L. [mailto:John.L.McLemore@conocophillips.com]
**Sent:** Monday, May 10, 2010 4:25 PM
**To:** Brian D. Pardo
**Subject:** RE: Greetings

Way to go!  A Lear jet!  You must take me to the yacht via Lear jet one of these days.  Were you familiar with that company in San Antonio?  Will that have any affect on current laws etc.?

**From:** Brian D. Pardo [mailto:bpardo@lifepartnersinc.com]
**Sent:** Monday, May 10, 2010 4:07 PM
**To:** McLemore, John L.
**Subject:** RE: Greetings

John – It is great to hear from you. Everything is fine. I haven't talked with Darlie, but I do keep her trust fund filled up so she can have whatever she can get with it. She writes often and I answer once in a while. It's a shame, but she more or less put herself there notwithstanding our considerable efforts. Good to hear from you. If you ever get to Waco stop by.

I have my own Lear jet and I spend time on my yacht every few weeks. Brian


**Brian D. Pardo**
*Life Partners, Inc.*



**From:** McLemore, John L. [mailto:John.L.McLemore@conocophillips.com]
**Sent:** Monday, May 10, 2010 3:47 PM

2

App. 079

LPCN_00100686_00002

**To:** Brian D. Pardo
**Subject:** Greetings

Brian,

I hope all is well with you.  I have not checked in with you in a while.  I saw something in the Houston newspaper recently about a life settlement company in San Antonio being shut down.  It reminded me I have not said hello in a while.

I went and saw Darlie Routier a few weeks ago.  First time I have seen her in close to ten years.  It is hard to believe she has been there for 14 years now.  She tried to put on a brave face and as sweet as possible - but she has been broken by that place.  Not the same naïve little girl that entered that place.

What is new in your world?  How is the yacht?  How is your health?  I hope you are taking good care of yourself.

I am still with ConocoPhillips.  It is like living in a Dilbert cartoon.  I do not read that cartoon but I know what it is about.  I wonder sometimes how anything ever gets done.  Meetings to plan meetings to hire a consultant to tell you what kind of team building games will make your workforce more productive.  How about let's find some oil and then get it out of the ground.  And as far as motivating the workforce - how about the paycheck that comes every tow weeks?  I guess I am not the same naïve person that came here 9 years ago…

Sorry I have not written in a while.  You know you are one of my favorite people on the planet.

John McLemore
ConocoPhillips
Advisor, Upstream
Middle East, Asia & Australia
281-293-1247 Office
832-866-2650 Mobile

3

App. 080

LPCN_00100686_00003