**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LIFE PARTNERS CREDITORS'** | § | |
| **TRUST and ALAN M. JACOBS,** | § | |
| **TRUSTEE,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | **Civil Action No. 4:19-CV-00497-O** |
| VS. | § | |
| | § | |
| **JAMES ALEXANDER, et al.,** | § | |
| | § | |
| Defendants. | § | |

---

**ALEXANDER DEFENDANTS'
SUR-REPLY TO PLAINTIFFS'
MOTION TO CERTIFY CLASS ACTION**

---

Respectfully submitted,

/s/ Thomas S. Brandon, Jr.
Thomas S. Brandon, Jr.
Texas Bar Number 02881400
tbrandon@whitakerchalk.com

Robert A. Simon
Texas Bar Number 18390000
rsimon@whitakerchalk.com

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
817-878-0500 (main)
817-878-0532 (direct dial)
817-878-0501 (fax)

**ATTORNEYS FOR ALEXANDER DEFENDANTS** [1]

---

[1] *Alexander Defendants includes:   James Alexander, Melchor Balazs, Isabel Balazs, A. H. Broman, Dorothy Broman, Russel J. Cepelak, Clair Crossland, Steven B. Deck, John Russell Gove, Ronald Larry Hankins, William Hinds, Geoff B. Horst, Janet K. Horst, Geoff Horst and Janet Horst, as Joint Tenants, James T. Lee, David W. Lynn, John R. Murray, William Michael Tolleson, Dean Vagnozzi, Elizabeth A. Cline, Robert G. Westrup, Steven T. Gibson, Steve Brorman, John P. Ley, Susan Nieder-Cassel, Katherine A. Hufstetler, Hollis Steven Hufstetler, and David DeBus*

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Now come the Alexander Defendants ("Respondents"), namely, James Alexander, Melchor Balazs, Isabel Balazs, A. H. Brorman, Dorothy Brorman, Russel J. Cepelak, Clair Crossland, Steven B. Deck, John Russell Gove, Ronald Larry Hankins, William Hinds, Geoff B. Horst, Janet K. Horst, Geoff Horst and Janet Horst, as Joint Tenants, James T. Lee, David W. Lynn, John R. Murray, William Michael Tolleson, Dean Vagnozzi, Elizabeth A. Cline, Robert G. Westrup, Steven T. Gibson, Steve Brorman, John P. Ley, Susan Nieder-Cassel, Katherine A. Hufstetler, Hollis Steven Hufstetler, and David DeBusk, individually named as Defendants, and sur-reply in opposition to granting class certification in this action, showing as follows:

A.  **NOT ALL POTENTIAL DEFENDANTS ARE LIKELY TO BE SIMILARLY SITUATED SINCE AT LEAST SOME OF THE POTENTIAL CLASS DEFENDANTS MAY BE ENTITLED TO RETAIN SOME DIVIDENDS BASED ON VALUE PROVIDED TO THE DEBTOR—PARTIAL SATISFACTION OF FRAUD OR RESTITUTION CLAIMS—AND THE RESULT MAY VARY BASED ON TIME OF PURCHASE AND STATE OF MIND OF THE DEFENDANTS.**

1.  In the Second Amended Class Action Complaint (SACAC), Plaintiffs allege:

231.  … Pardo and other Life Partner executives devised and executed a wide-ranging scheme through Life Partners to **defraud its Investors**.  This scheme was led and perpetrated by Pardo. * * *

263.  Moreover LPHI (and LPI) was **insolvent** at the time of, or was rendered insolvent by, or had reasonably [sic] small assets or capital in relation to its business or the transaction at the time or as a result of the [sic], the declaration and payment of each of the dividends and Transfers.

2.  Further, Plaintiffs define the proposed "Defendant Class" in SACAC ¶ 265 as:

All persons or entities who were the **shareholders** of record or beneficial owners of shares of LPHI and received dividends at any time from January 2008 through February 2015….

3.  Implicit in these allegations is the assertion that the transferor, LPHI, was **insolvent** from at least January 2008.  Yet the class range runs from January 2008 to February 2015, with

the subclasses set out in ¶ 266 being broken down into intermediate stock ownership periods (January 2008 through January 19, 2011; January 20, 2011 through January 19, 2013; and January 20, 2013 through January 20, 2015), implicitly recognizing that *some of the putative class Defendants did not purchase their shares until <u>after</u> LPHI became insolvent*.  Therefore, at least some of the putative class Defendants are in the category of the "defrauded Investors" who purchased their shares after LPHI had become insolvent.

4.  According to Fifth Circuit and other substantial case law, if an investor or shareholder purchases shares at a time when the corporation is insolvent, pursuant to a scheme to defraud investors, then subsequent receipt of dividends by that defrauded investor constitutes "value" to the defrauding corporation by a proportionate reduction of the amount of that investor's restitution claim, up to the amount of his investment.  *See*, *e.g.*, *Janvey v. Brown*, 767 F.3d 430, 443 (5th Cir. 2014) ("Finally, we agree with the district court that principal payments made to the investor-defendants are not subject to TUFTA claims.  Unlike interest payments, it is undisputed that the principal payments were payments of an antecedent debt, namely fraud claims that the investor-defendants have as victims of the Stanford Ponzi scheme.") (footnote citation omitted), affirming *Janvey v. Alguire*, No. 3:09-CV-0724-N, 2013 WL 2451738, 2013 U.S. Dist. LEXIS 82568, *56-57, *65-66 n.8 (N.D. Tex. Jan. 22, 2013); *Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011); *AFI Holding, Inc. v. Mackenzie*, 525 F.3d 700, 708 (9th Cir. 2008) ("If AFI had only provided Mackenzie a portion of his initial investment, as a fictitious gain or otherwise, Mackenzie would be entitled to keep that amount as an exchange for a proportionate reduction in his restitution claim.").

5.  However, retention of the restitution payment (ostensible dividend) depends on the "good faith" of the transferee.  *AFI*, 525 F.3d at 709.  This is not a matter that can be determined

on a classwide basis; rather, Plaintiffs' right to and amount of recovery against any particular putative class Defendant varies according to each Defendant's *state of mind*.

6.      Further, the *point in time* at which any class member *bought* his shares may be determinative of whether he has a right to retain the dividend payments based on "fraud restitution."  Plaintiffs do not attempt to define the class (or subclasses) based on when they *purchased* any shares.

7.      Further, in the event that LPHI was not technically a "Ponzi scheme," whether and when LPHI had a *fraudulent intent* when it paid any dividends may vary as between class members as far as intentional fraudulent transfer claims are concerned.

8.      Therefore, Plaintiffs failed to meet their burden of proof to show typicality.  Instead, their claim and recovery against each putative Defendant depends on facts specific to each Defendant which cannot be determined on a class basis.  *Cf. Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 704 (5th Cir. 2012) ("jury will have to engage in file-by-file review"); *Noonan v. Ind. Gaming Co., L.P.*, 217 F.R.D. 392, 397 (E.D. Ky. 2003) ("distinct possibility of different outcomes for different cases"); *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 3479884, 2013 U.S. Dist. LEXIS 97275, *50 (N.D. Tex. July 9, 2013) ("The damages must be capable of determination on a class-wide basis").

**B.      THIS COURT LIKELY DOES NOT HAVE PERSONAL JURISDICTION OVER SOME DEFENDANTS, ALSO DEFEATING TYPICALITY**.[2]

9.      With respect to personal jurisdiction in an adversary proceeding, Bankruptcy Rule 7004(f) provides:

> **(f) Personal jurisdiction**. *If the exercise of jurisdiction is consistent with the Constitution* and laws of the United States, serving a summons or filing a waiver of

---

[2] This issue is *distinct* from and in addition to the *venue* issue referenced in Respondents' Response.

> service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Bankruptcy Rule 7004(f) (italics added). Adding this "if" language *necessarily* recognizes that there could potentially be situations where such an attempted "exercise of jurisdiction" was ***not*** "consistent with the Constitution." Otherwise, that language would be a mere *redundancy*, and "we would be reluctant to give a statute that construction which makes it wholly redundant…." *Singer v. United States*, 323 U.S. 338, 344 (1945).

10.     This being the case, merely holding that one's *presence in the United States* in and of itself necessarily subjects an individual citizen to personal jurisdiction in *any* bankruptcy court *across the country* is not consistent with this "if" proviso or caveat. *Contra Zazzali v. 1031 Exch. Group LLC (In re DBSI, Inc.)*, 467 B.R. 309, 314 (Bankr. D. Del. 2012); *cf. also L.D. Brinkman Corp. v. Anderco Carpet Co. (In re L.D. Brinkman Holdings, Inc.)*, 310 B.R. 686, 689 (Bankr. N.D. Tex. 2004) (Felsenthal, B.J.).

11.     Respondents recognize that the currently "controlling precedent" in this Circuit as to a statute providing for "nationwide" service of process *generally* conferring personal jurisdiction is *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States.") (citation omitted). However, the *Busch* majority was roundly criticized in this respect in the dissent by Judge Garza. *See id.*, 11 F.3d at 1259 ("Because the personal jurisdiction requirement is a function of the individual liberty interest, the proper focus for a personal jurisdiction test should be on protecting an individual's liberty interest in avoiding the burdens of

litigating in a distant or inconvenient forum.  Requiring that the individual defendant in a national service of process case only reside somewhere in the United States does not protect this interest.") (footnotes omitted).  *See also* Judge Garza's criticism of the *Busch* holding in *Bellaire General Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 826 (5th Cir. 1996) ("Although we dutifully apply *Busch*, we emphasize our disagreement with it to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign.  We view personal jurisdiction and service of process as conceptually distinct issues.  We fail to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions.").

12.     Other Circuits have *subsequently* held that the mere nationwide-service reach of a federal statute does not *ipso facto* confer personal jurisdiction over all residents in the country.  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997) ("even when a defendant resides within the United States, courts must ensure that requiring a defendant to litigate in plaintiff's chosen forum is not unconstitutionally burdensome") (footnote omitted); *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) ("Accordingly, we hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment 'protects individual litigants against the burdens of litigation in an unduly inconvenient forum.'"), citing *BCCI*.

13.     No Fifth Circuit appellate decision appears to have addressed this "nationwide" personal jurisdiction issue *in the specific context of bankruptcy adversary proceedings*.  There is reason to conclude that in the precise context of this case, the Court would find that personal jurisdiction is *not* present over each and every one of the potential class Defendants under Rule

7004(f).  Specifically, *Congress has specifically indicated solicitude* in this respect for the rights of certain alleged "transferees" to only be sued in their "home districts" in 28 U.S.C. § 1409(b):

> Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,375 or a consumer debt of less than $20,450, or a debt (excluding a consumer debt) against a noninsider of less than $13,650, only in the district court for the district in which the defendant resides.

14.     There is *no other apparent reason* for Congress to specifically provide that suits in such instances only be filed in "home districts" besides the recognition of *fundamental unfairness* of someone with a very small amount at stake having to expend the resources to defend in a foreign forum, which might very well cost more than simply "capitulating" to an unfair charge.  This *specific statutory proviso*, not comparable to the circumstance present in *Busch*, lends credence to considering that it is not constitutionally permissible to exercise personal jurisdiction over *all* nonresidents of a district in bankruptcy fraudulent transfer suits regardless of the amount involved.

15.     *Logically*, it makes little difference insofar as imposition and unreasonable demand on a defendant residing in Hawaii having to defend a case in Maine (or in Alaska having to defend in Texas) simply because the case arises under a federal statute instead of a state one.  The question is not one of "power" of the sovereign to compel attendance, but, as Judge Garza wisely opined, "protecting an individual's liberty interest in avoiding the burdens of litigating in a distant or inconvenient forum."  *Busch*, *supra*, 11 F.3d at 1259 (Garza, J., dissenting).  The Fifth Amendment says nothing whatsoever about "sovereign power," but rather states that no person shall "be deprived of … property, without due process of law."  U.S. CONST. Amend. 5.  The *whole purpose* of the Bill of Rights was to *protect* citizens from governmental overreach.  Consequently, the mere fact that one is a "citizen" can hardly in and of itself operate to *suspend* one's due process rights.

16.     In a case within the Tenth Circuit (which, post-*Busch*, recognized due process rights in *Peay*, *supra*), a lower court decision found the level of "inconvenience" in having to defend in a foreign forum to be "constitutionally significant."   *Talkin v. Deluxe Corp.*, No. 05-2305, 2007 WL 1469643, 2007 U.S. Dist. LEXIS 36977, *9 (D. Kan. May 18, 2007).  And with respect to the precise question of "burden on the trustee," found to be of countervailing weight in *Zazzali*, *supra*, it is evident that Congress has *specifically considered* this matter and found the individual's inconvenience and expense to be *weightier* in that regard in § 1409(b), *supra*.  It is, after all, the *defendant* whose money is being sought to be forfeited.

17.     Nor can the mere fact that the company from which the proposed-class Defendants in this case bought stock was a Texas company by itself carry the day in that respect.  *See*:

> The fact that a company in which Defendant Lorenzo directly or indirectly owns stock or indirectly through stock ownership has some other ownership interest has conducted business in New Mexico has no bearing on the issue of Defendant Lorenzo's contacts with New Mexico.

*Medina v. Lorenzo*, No. 04-171, 2004 U.S. Dist. LEXIS 32796, *15 (D. N. Mex. June 16, 2004).

18.     "[W]here, as here, the alleged facts are disputed, 'the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court.'"  *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990) (citations omitted).  Plaintiffs here have alleged nothing more than that Defendant-class members allegedly received dividends from the Debtor.  No other connections with this District are alleged, nor any type of showing of satisfaction of "due process."  Since many of the Defendants are not Texas residents (including, for example, even many named Defendants as alleged in the SACAC), whereas some are, there is no "typicality" with respect to presence or absence of personal jurisdiction.  Therefore, this is another ground defeating the propriety of

pursuit of this case as a class action.

     **WHEREFORE**, Respondents submit that class certification should be **DENIED**.

Respectfully submitted,

/s/Thomas S. Brandon, Jr.
Thomas S. Brandon, Jr.
Texas Bar No. 02881400
Robert A. Simon
Texas Bar No. 18390000
Thomas F. Harkins, Jr.
Texas Bar No. 09000990
**WHITAKER CHALK SWINDLE
& SCHWARTZ, PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0532
Facsimile: (817) 878-0501
tbrandon@whitakerchalk.com
rsimon@whitakerchalk.com
tharkins@whitakerchalk.com

**Attorneys for Alexander Defendants**

### CERTIFICATE OF SERVICE

     This is to certify that a true and correct copy of the foregoing document was served, pursuant to the Federal Rules of Civil Procedure, on attorneys for the Plaintiffs and on all counsel appearing herein via ECF on this the 27th day of April, 2020, and specifically on the following via ECF and by email:

David M. Bennett
Nicole Williams
Jennifer R. Ecklund
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

     /s/ Thomas S. Brandon, Jr.
Thomas S. Brandon, Jr.